Donald E. Walden, Plaintiff-Appellant, v. Schillmoeller & Krofl Company, Inc., a Corporation, and The Catholic Bishop of Chicago, a Corporation Sole, Defendants, Schillmoeller & Krofl Company, Inc., a Corporation, Defendant-Appellee.

Gen. No. 68–65.

Second District.

June 16, 1969.

Diver, Diver, Ridge and Brydges, of Waukegan, for appellant.

Fred B. Meyer, of Waukegan (John F. Grady, of Waukegan, of counsel), for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

Plaintiff brought suit against defendant to recover for personal injuries sustained by plaintiff in falling from a scaffold erected by defendant. Action was brought pursuant to the Illinois Structural Work Act, commonly known as the Scaffold Act (Ill Rev Stats 1963, c 48, §§ 60, 69). After trial of the case, the jury returned a verdict of not guilty for defendant. Plaintiff's post trial motions were denied and the trial court entered judgment on the verdict. It is from this judgment that plaintiff appeals.

It is plaintiff's contention that the trial court erred in failing to grant plaintiff a judgment notwithstanding the verdict on the issue of liability alone for the reason that plaintiff established all the elements of his case as a matter of law; that the trial court erred in failing to grant plaintiff a new trial on all the issues for the reason that the verdict of the jury finding defendant was not guilty was against the manifest weight of the evidence; and that the trial court had erred in failing to strike certain affirmative matter from defendant's answer, thereby allowing the introduction of certain evidence at trial which was prejudicial to plaintiff and confusing to the jury.

On September 17, 1964, plaintiff was employed by M & H Steel Setters, a partnership engaged in providing structural iron workers for construction jobs. Prior to September 17, 1964, defendant was acting as general contractor in the construction of a school building at 83rd and St. Louis streets in Chicago, Illinois. In pursuance of its role as general contractor, defendant contracted with M & H Steel Setters to perform certain iron work in the school construction. Defendant supplied the steel to be used. Sometime prior to September 17, 1964, carpenter employees of defendant constructed a certain wood support on the outside of the school construction at a distance of 25 to 30 feet above the ground, which was to be used to support workers as they performed their jobs. This support consisted of 2″ by 12″ boards each about 20 feet long, laid end to end the entire length of the steel structure. These 2″ by 12″ boards were nailed to 4″ by 4″ boards known as shorings. The shorings were fastened to the permanent structure by Ellis clamps which were designed to make a tighter grip as more weight is exerted downward on the shoring. The shorings were spaced about 15″ to 20″ apart. This scaffold had no guard rail.

On September 14, 1964, plaintiff was assigned for the first time to work at this site where the accident occurred. Plaintiff was engaged in setting steel beams into

the south wall of the building. Each beam consists of six 20 foot steel bars, each bar weighing 100 to 125 pounds and measuring $\frac{7}{8}$ inch in diameter. Sometime around 2:45 in the afternoon, plaintiff was engaged in assisting another employee in carrying the steel rods from the northeast corner of the third floor over to where the rods were being set into the beam. After setting the rods down, plaintiff stepped down to the scaffold. Plaintiff's foreman and his father, a coemployee, were also on the scaffold preparing to tie in the last beam on the south side. When plaintiff got on the scaffold, he was some 35 to 40 feet from the foreman and his father. Plaintiff had walked 10 to 15 feet on the scaffold toward the other men when he felt something strike his elbow. When he turned he saw that the top portion of the beam was rolling away from the building. It was this beam which the ironworkers had just finished working on. As plaintiff was hit by the falling beam he was knocked to the ground suffering personal injuries, the nature and extent of which are immaterial for the purposes of this appeal.

Plaintiff testified that prior to this accident he had been engaged in this type of employment for eight years. Plaintiff also testified that scaffolds on similar jobs ". . . generally . . . were wider." Plaintiff's foreman testified that in his 18 years of experience he had done beam setting from outside scaffolds at least a dozen times and that on these jobs the scaffolds were equipped with "a guard rail or rope guard rail, if not wood." The plaintiff during his testimony stated that he had attempted to do iron work after the accident and in September of 1966, for three days, his father and brother "carried him" in connection with the work at the job site. He stated all he was able to do was "stand up straight and tie the iron beams." He denied he had done or attempted to do any steel work at any other time or place since the accident.

Defendant introduced into evidence motion pictures showing plaintiff engaged in normal activities of an iron

98

worker just ten days before he testified in the trial. These motion pictures showed plaintiff lifting and carrying heavy pieces of steel without apparent difficulty.

The principle thrust of that portion of defendant's answer which plaintiff attacks was the defense that the proximate cause of the injury suffered by plaintiff was something other than a violation of the Scaffold Act by defendant. The defendant maintained through his pleadings and the evidence presented that the proximate cause of plaintiff's injuries was the breaking loose of a steel beam which struck the plaintiff and knocked him to the ground, and not that the scaffold was in violation of the statute.

Defendant concedes contributory negligence is not a defense to an action under the Scaffold Act and that the portion of the answer referring to such negligence should have been stricken on motion. Our attention has been called to a portion of the record of testimony offered by defendant which the plaintiff claims would be objectionable if the trial court had not so ruled. In reviewing this, it appears to us that the testimony referred to was directed to the issue of proximate cause rather than the plaintiff's negligence. Plaintiff's failure to object to the testimony at the time it was offered cannot now be raised for the first time on appeal. The People v. Trefonas, 9 Ill2d 92, 98, 99, 136 NE2d 817; Town of Normal v. Witham, 91 Ill App2d 262, 265, 233 NE2d 768.

Plaintiff concedes that he can find no Illinois case holding that the question of whether a given scaffold is safe or unsafe is a question to be determined as a matter of law. He concedes that the cases uniformly hold that whether a given scaffold violates the Act is a question for the jury. In Schultz v. Ericsson Co., 264 Ill 156, p 164, 106 NE 236, the court stated:

"No attempt is made to define what shall be considered or shall constitute a safe, suitable and proper scaffold, which, from the very nature of things, could

not well be done, for what might be a safe, suitable and proper scaffold for one kind of work under one set of conditions or circumstances would be wholly inadequate, insufficient and unsafe for doing another kind of work under other conditions or circumstances and at a different height from the ground."

The court, at p 166, concluded:

"The statute not defining what shall constitute a safe, suitable and proper scaffold, the question then must be left to the jury for determination as one of fact."

In Oldham v. Kubinski, 37 Ill App2d 65, 86–87, 185 NE2d 270, the court said:

"The statute not defining what shall constitute a safe, suitable, and proper scaffold, etc., the question then must necessarily be left to the jury for determination as one of fact: Schultz v. Henry Ericsson Co. (1914) 264 Ill 156, 106 NE 236, 'Illinois Scaffold Act Liability,' 50 Ill Bar Jour, p 1092, Aug, 1962."

We cannot agree with plaintiff's contention that on the facts before us the trial court should necessarily have determined as a matter of law that the scaffold was unsafe or that the condition of the scaffold was the proximate cause of plaintiff's injuries. We believe such questions were properly left for the determination of the jury.

Finally, plaintiff asserts that the verdict of the jury finding the defendant not guilty was against the manifest weight of the evidence. For a verdict to be held against the manifest weight of the evidence an opposite conclusion must be clearly evident. Arboit v. Gateway Transp. Co., 15 Ill App2d 500, 507, 146 NE2d 582. Manifest means: clearly evident, clear, plain or undisputable. Elgin Lumber & Supply Co., Inc. v. Malenius, 90 Ill App2d 90, 97, 232 NE2d 319. Having reviewed the record we are

of the opinion that the evidence in support of plaintiff's position does not so overwhelmingly outweigh the evidence in support of the verdict in favor of defendant that the jury's verdict could not stand. We conclude that the trial court did not err in denying plaintiff's post trial motions. Pedrick v. Peoria & Eastern R. R. Co., 37 Ill2d 494, 510, 511, 229 NE2d 504.

The judgment of the trial court is hereby affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.