6 Ill. App.3d 329 (1972)
285 N.E.2d 537
PAUL F. DOHERTY, Plaintiff-Appellant,
v.
NATIONAL CASTING DIVISION, MIDLAND-ROSS CORPORATION, Defendant-Appellee.
No. 55576.
Illinois Appellate Court  First District.
June 22, 1972.
*330 *331 Equi, Farwell, Rickelman & Proteau, of Chicago, for appellant.
Hackbert, Rooks, Pitts, Fullagar & Poust, of Chicago, (John T. Poust and Dwight C. Adams, of counsel,) for appellee.
Reversed and remanded.
Mr. JUSTICE DEMPSEY delivered the opinion of the court:
In this action, brought under the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, par. 60-69) a summary judgment was entered for the defendant, the National Casting Division, Midland-Ross Corporation. The plaintiff, Paul Doherty, contends in this appeal that the trial court erred in entering the judgment because the pleadings, discovery depositions and affidavits raised genuine issues of material fact.
Doherty was a carpenter employed by Olson Bros. & Sons Construction Co., Inc., which was doing demolition and alteration work on several National Casting buildings. Doherty and a co-worker were standing on two planks nailing sections of plywood to a temporary wall on the inside of building No. 5. The planks collapsed; he fell about 25 feet to the floor and was injured.
Doherty's complaint alleged that National Casting had charge of the scaffolding which supported the planks. The defendant admits that it was in charge of the work being done by Olson Bros., but its answer denied that it had charge of the scaffolding, which had been erected by employees of Olson Bros., and denied that it violated the Structural Work Act or that any violation of the Act was willful.
In its motion for summary judgment, the defendant relied upon Doherty's deposition and his answers to interrogatories. In his deposition he stated that he had assisted in constructing the scaffold the morning of the day the accident occurred. He said that one end of the planks on which he was standing rested on a metal tower and the other end rested on a structure made of lumber which, in turn, rested on a permanent catwalk on the south wall of building No. 5. He admitted that he had assisted in constructing the scaffold. He said that he had been standing on the planks one-half to one hour before they collapsed and did not know what caused them to do so. He also stated that supervising personnel of the defendant were on the job every day and probably were the morning before the 2:30 P.M. accident, but he did not know, of his *332 own knowledge, whether anyone inspected the scaffold prior to its collapse. The defendant's motion concluded that there was no violation of the Structural Work Act and no material issue as to any material fact, since Doherty did not know what caused the planks to fall and could not prove that the defendant inspected the scaffold, had a reasonable opportunity to do so or, if it did, could have detected any defect.
Doherty opposed the motion and submitted the deposition of his foreman, Daniel Brandt, the affidavit of William Taylor, who was standing with him on the planks at the time of the accident, and the affidavit of Roland Peck, the supervising project manager for National Casting. Brandt's job was to cut the plywood to the correct size and raise the pieces to the two carpenters by means of a pulley attached to the tower. He testified in his deposition that he heard the noise of something breaking, looked up and saw the men coming down. He thought the swaying of the tower brought about by the carpenters walking back and forth on the planks caused the bridging to pull loose from the catwalk. Taylor stated in his affidavit that, on the morning of the accident, he was standing at the base of the scaffold with his supervisor, Brandt. Roland Peck was looking at the catwalk and tower. Taylor overheard Peck tell Brandt that the catwalk side was too low and would have to be built up so that the planking as it extended from the steel tower would make level footing. After the conversation, Taylor heard Brandt direct Doherty to bridge up the catwalk side. Under National Casting's contract with Olson Bros., the right was reserved to inspect Olson's workmanship and safety practices. Peck's affidavit stated that he was the project manager and inspections were made by him or under his direction. He said he was on the jobsite daily and that, "The probability is great that I was on the jobsite on the day of October 23, 1967, before the accident occurred." He added that "in all likelihood" one of his assistants also had been on the jobsite October 23rd prior to the accident.
It is apparent that on their face these documents cured the alleged deficiencies in Doherty's deposition. They answered the defendant's contention that he had no proof that it had knowledge of a dangerous condition in the scaffold or could have known of a dangerous condition if it had used reasonable care.
The defendant, however, argues that the affidavits do not create issues of fact: Taylor's because it was contradicted by a deposition he gave in another case, and Peck's because it stated conclusions to which he could not competently testify.
 1, 2 In support of its argument the defendant submitted to the trial court a deposition taken from Taylor in a separate suit arising from the same accident in which he was the plaintiff and National Casting the defendant. *333 In this deposition he said that he did not see the defendant inspect the scaffold and did not hear the defendant give any instruction pertaining to it. It is contended that Doherty cannot rely on Taylor's affidavit because there was no explanation for the variance between his affidavit and deposition. Two cases in which summary judgments were allowed, Burnley v. Moore (1963), 41 Ill. App.2d 156, 190 N.E.2d 141, and Meier v. Pocius (1958), 17 Ill. App.2d 332, 150 N.E.2d 215, are cited for the proposition that a variance such as this is fatal to a plaintiff's case. Burnley and Meier were dram shop actions in which the defendants moved for summary judgment on the basis of depositions taken from the respective plaintiffs. In response, the plaintiffs filed counter-affidavits which contradicted material portions of their previous testimony. In affirming the judgments for the defendants, this court pointed out that the plaintiffs offered no explanation for the variances between their sworn depositions and affidavits; that their affidavits could not be relied upon to create issues of fact, and that denying summary judgments, under the circumstances, would be inviting the plaintiffs to commit perjury by reconstructing their testimony in court to avoid the consequences of their depositions. In the present case, Taylor is a witness, not a party. Although his deposition was taken as the plaintiff in a suit against National Casting for injuries arising out of the same accident, the present suit involves a different party who was neither present nor had the right to ask clarifying questions during the taking of his deposition. The inconsistencies found in Taylor's statements may be used for impeachment purposes if Doherty calls him as a witness, but they cannot be the basis for ignoring the effect of his affidavit in its application to the motion for summary judgment.
 3 In its criticism of Peck's affidavit the defendant points to his statement, "The probability is great that I was on the jobsite * * * before the accident occurred." The criticism that this is not a statement which would be admissible in evidence applies with equal force to one of his other statements that "* * * in all likelihood" one of his assistants had been there prior to the accident. Although neither statement meets the requirements of an affidavit in opposition to a motion for summary judgment (Ill. Rev. Stat. 1967, ch. 110A, par. 191(a)), the defendant overlooks another statement in Peck's affidavit where he said, "* * * I was on the jobsite daily." The latter statement is definite and admissible, and sufficiently raises the factual issue of inspection.
 4 Under the Structural Work Act, liability extends not only to those persons who actually erect a scaffold but also to those who have charge of the alteration or erection of any building or structure and willfully violate or fail to comply with the Act. Larson v. Commonwealth Edison *334 Company (1965), 33 Ill.2d 316, 211 N.E.2d 247; Gannon v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co. (1961), 22 Ill.2d 305, 175 N.E.2d 785.
 5-7 The word "willfully" as used in the Act, is synonymous with the word "knowingly"; to constitute a willful violation it is not necessary that there should have been a reckless disregard of the provisions of the Act. A defendant having charge of the work is liable when the dangerous condition is known to him, or when by the exercise of reasonable care the existence of such dangerous condition could have been discovered and became known to him. (Kennerly v. Shell Oil Company (1958), 13 Ill.2d 431, 150 N.E.2d 134; Lawler v. Pepper Construction Company (1961), 33 Ill. App.2d 188, 178 N.E.2d 687.) The Act does not specify the requirements for a safe, suitable, and proper scaffold and circumstances vary with each case. (Burgh v. Crane Construction Company (1968), 102 Ill. App.2d 188, 243 N.E.2d 590.) Whether a scaffold meets the requirements of the Act is a question which must necessarily be left to the jury for determination. Walden v. Schillmoeller & Kroft Company (1969), 111 Ill. App.2d 95, 248 N.E.2d 547; Dinschel v. United States Gypsum Company (1967), 83 Ill. App.2d 466, 228 N.E.2d 106.
 8, 9 A party is entitled to summary judgment only if the pleadings, depositions, affidavits, exhibits and admissions on file show that there is no genuine issue of material fact. The right to a jury trial shall not be denied if fair-minded persons can draw different conclusions from the facts set forth in these documents. The plaintiff's problem appears to be the twofold burden of proving that there was a defect in the scaffold which made it unsafe and that National Casting had actual or constructive knowledge of the defect. Whether he can meet this burden is not our present concern. The only question in this appeal is whether he shall be given the opportunity of doing so. We believe he should.
The judgment is reversed and the cause remanded.
Reversed and remanded.
McGLOON, P.J., and McNAMARA, J., concur.