JOHN   TASKAY,   Plaintiff-Appellee,   *v.*   FOSCHI   BROTHERS
INCORPORATED, Defendant-Appellant.

Third District   No. 75-323

Opinion filed December 30, 1976.

Dunn, Stefanich, McGarry & Kennedy, Ltd., of Joliet (Francis Riley, of counsel), for appellant.

George Troha, of Joliet, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment in favor of the plaintiff, John Taskay, and against the defendant, Foschi Brothers Incorporated, after trial by jury in Will County. The jury's verdict and award of $55,000 as damages was predicated upon the defendant's alleged liability under the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, par. 60 *et seq.*).

The prime contractor, Illinois Bank Building Corporation, had a contract to build a new bank in Joliet, Illinois. On November 6, 1967, the defendant entered into two subcontract agreements with the prime contractor. One contract required the demolition of two buildings in the city of Joliet by the defendant and the second contract required that the defendant do excavating work, including stripping of overburden, rock excavation and disposal of all excavated material.

Frank Peterson, superintendent for the prime contractor, testified that the defendant, Foschi Brothers Incorporated, decided how the old building was to be razed and how the excavating was to be done, that the defendant was to follow dimensions set forth on prints but as to methods of excavating, equipment to be used and number of men needed were all decisions to be made by the defendant. During the course of excavating at the building site it was deemed necessary to put up beams and supports in order to brace and support the wall of a building immediately north of the construction site. The decision to install such shoring beams was made by both the prime contractor and the defendant. It was the further testimony of the witness Peterson that the beams and pipes were installed by Lockport Iron who had a contract with the prime contractor to do the structural steel work on the new bank building and that such installation was made at the direction of the prime contractor. Peterson's testimony was that the defendant had nothing to do with the installation of the supporting beams and pipes or with the hiring of the Lockport Iron people.

A witness Edward Kure testified as follows: that he and his brother were owners of Lockport Iron, that they were hired by the prime contractor to install the bracing which was to support the wall adjacent to the building site, that such installation was not part of the contract they had entered into with the prime contractor, but was additional

employment, and that he and his employees were on the payroll of the prime contractor. Kure further stated that on December 5, 1967, he received a message that he was to go to the bank site the next day, but he had no knowledge as to who had called in the message. On December 6, 1967, Kure, John Taskay, the plaintiff, and a fellow employee, John Plese, were on the construction site. He further testified that on that particular date the only other people present were associated with the defendant and that it was necessary to remove portions of the bracing since it was interfering with the defendant's excavating operation. Certain supports consisting of pipes pinned to the ground and other pipes running at an angle from the ground to vertical supporting beams were removed and the defendant continued to excavate with the use of a bulldozer, pneumatic drill, end loader, air compressor and trucks. When it came time to replace the bracing at approximately 4 o'clock in the afternoon one of the beams had shaken loose from the wall and it fell and struck the plaintiff on the head. It was the further testimony of Kure that he dealt entirely with the Foschi people or in other words, the defendant. Lockport Iron on December 6, 1967, the day of the accident, had on the building site a truck with a hoist, a cutting torch and welding machine.

The testimony of John Plese was that on December 6, 1967, he was on the building site and received his orders from his boss, Ed Kure, but that he heard one of the defendant's men tell his boss that it would be nice if the pipes could be taken down so that they could continue with the excavating. Plese's version of the accident was the same as that of the witness Edward Kure.

The testimony of the plaintiff in regard to the events on the building site is substantially the same as that of Edward Kure and John Plese with the exception that he saw an employee of the defendant, Sal De Angelos, talking to Edward Kure about the removal of the pipes.

Edward Foschi testified that he was the president of the defendant company and that on December 6, 1967, he had five men on the building site and that the boss of the crew was Sal De Angelos. He was not on the site at the time of the accident and he had not contacted Lockport Iron to come to the site but had contacted Mr. Peterson, superintendent of the prime contractor, about the beams being in the way of the excavating operation and that he wanted them moved.

Salvatore De Angelos, previously referred to as Sal De Angelos, testified that he was labor foreman for the defendant and that he told Ed Foschi that he would have to get somebody to get the beams out of the way so that the north wall could be completed. He stated that with the exception of saying "Hi" to one of the Kure brothers on December 6, 1967, he had no further conversation with anyone connected with Lockport Iron.

In examining the record it becomes clear that Peterson, superintendent of the prime contractor, was not on the site at the time the men of Lockport Iron were, and further that the Lockport Iron crew were aware of the fact that on December 6, 1967, they were on the payroll of the prime contractor. The record further discloses that the supporting beams and braces were installed by Lockport Iron in August or September, 1967, which was several months prior to the date of the accident and at the time of installation the crew or men of Lockport Iron were not acting in the capacity of employees of a subcontractor, but were in fact employees of and on the payroll of the prime contractor.

The paramount issue to be determined in this appeal is whether or not the defendant was a person having charge of the work within the meaning of the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, par. 60 *et seq.*).

■■ Section 9 of the Structural Work Act imposes civil liability for wilful violation of the Act, or wilful failure to comply with any of its provisions upon "Any owner, contractor, sub-contractor, foreman, or other person having charge of the erection, construction, repairing, alteration, removal, or painting of any building, bridge, viaduct, or other structure within the provisions of this act, * * *" (Ill. Rev. Stat. 1967, ch. 48, par. 69.). Construing this language our Supreme Court has stated that "the legislature intended to hold liable those named persons who are in charge of the work * * *." *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.

Whether a defendant is a person "having charge of" the work within the meaning of the Act is primarily a factual question. (*Voss v. Kingdon and Naven, Inc.* (1975), 60 Ill. 2d 520, 328 N.E.2d 297.) Our supreme court has also held that the term "having charge of" is one of common usage and understanding and any attempt to define the term would only lead to confusion and error. (See *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) Nevertheless, before a defendant may be found to be in charge of the work there must be a showing that he had some direct connection with the construction operations. (See *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) In addition the defendant must have been in charge of the particular operations which involved the violation from which the alleged injury arose. *Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54; *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

Having set forth the requisite legal guidelines it now becomes incumbent upon this court to make a determination of the pivotal question as to whether or not the defendant was in charge of the work when the accident occurred which resulted in injury to the plaintiff.

In analyzing the evidence which was adduced during the course of the trial we should at the outset note that while Lockport Iron had a contract

to do the structural steel work on the bank building, the installation of the beams and bracing in August or September 1967 was not part of its contract with the prime contractor. On December 6, 1967, the date of the accident, the work performed by Lockport Iron was still not in performance of a contract. At all times prior to and on the date of the accident Lockport Iron and the crew it provided to install, remove and replace the beams acted in the capacity as employees hired by the prime contractor. On the day of the accident there was present on the building site in addition to the iron workers the defendant, who was not being supervised or directed in the excavating operation by the prime contractor or any other party.

It is clear from the record that Mr. Peterson, superintendent of the prime contractor, arranged for a crew from Lockport Iron to be on the building site for the purpose of removing beams which were in the way of the excavating operation, and these arrangements were made by Mr. Peterson after he had been requested to do so by Mr. Foschi, president of the defendant company.

■■ The witness Kure, an iron worker and part owner of Lockport Iron, stated that when he arrived at the building site he dealt with Foschi people. He testified that he was asked and told to take down a pipe and to detach another pipe from the ground, and that he was told by one of the defendant's men when to remove a particular support. Similar testimony was received from the ironworkers Plese and the plaintiff. As opposed to this testimony witnesses for the defendant corporation, namely Foschi and De Angelos, categorically denied that they ever talked to any of the ironworkers or told them what to do or how to do their job. It is difficult for us to accept the testimony of the witnesses Foschi and De Angelos when we are confronted with an excavation project where a bulldozer, a pneumatic hammer, a specially adapted end loader and trucks are being used and yet those in charge of the excavating at no time gave orders as to what pipe or beam was to be removed in view of the fact that the president of the defendant corporation had complained that the pipes and beams were obstacles and were in the way of the excavating equipment. Irrespective of our opinion, the conflicting testimony which weighs heavily on the question as to who was in charge of the work was properly an issue of fact for determination by the jury. See *Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 289 N.E.2d 12; *Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 221 N.E.2d 633.

■■ We are aware of the fact that the defendant never provided any labor, material or assistance in installing or removing the pipes and beams; however, such lack of participation does not in and of itself negate a finding that the defendant was in charge of the work if the defendant had the right to control the operation. (See *Buehler v. Toynan*

*Construction Co.* (1973), 52 Ill. 2d 214, 287 N.E.2d 691; *Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 289 N.E.2d 12.) In the instant case the defendant as a contractor was on the job site on the day of the accident. The Lockport Iron crew were employees of the prime contractor, working for hourly wages, and on the site at the request of the defendant. We believe that the defendant in fact exercised control of the work by requesting the iron workers to be on the job site and by directing them to remove certain beams in order to facilitate the excavating work.

In *Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185, 275 N.E.2d 905, we have a factual situation where one contractor requested another contractor to cut a hole in the top of an elevator shaft. The hole was cut, a brick fell through it and killed the plaintiff's decedent. The defendant argued that because the other contractor could have refused to cut the hole, he was not in charge. The reviewing court held otherwise by holding that the contractor who made the request was also in charge of the work.

■■ The defendant's argument to the effect that the prime contractor ordered the beams installed, and that men from Lockport Iron did install and later remove them and hence the defendant is absolved from liability, is not a tenable argument. It is well settled that more than one party can be in charge of the work. See *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785; *Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185, 275 N.E.2d 905.

■■ We can only conclude that when all the evidence is viewed in its aspect most favorable to the plaintiff it does not so overwhelmingly favor the defendant so that the verdict against the defendant cannot stand and therefore the trial court's order denying defendant's motion for judgment notwithstanding the verdict should be affirmed.

■■ Lastly, the defendant contends that the evidence fails to support a wilful violation of the Structural Work Act and further fails to support a finding that defendant's conduct was the proximate cause of the plaintiff's injury. Neither of these issues is properly before us for review, since a party may not urge as error on review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion. See Ill. Rev. Stat. 1971, ch. 110, par. 68.1(2).

For the reasons set forth the judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STENGEL, J., concur.