SHIRLEY SESEMANN, Plaintiff-Appellant, v. EUGENE ELLINGTON, Defendant-Appellee.

Second District   No. 75-289

Opinion filed August 15, 1977.

Robert J. Bourelle and Donald W. Ford, both of Wheaton, for appellant.

R. Gary Gooding and Robert J. Morrow, both of Aurora, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff sued for damages allegedly sustained in an automobile accident and the verdict was for the defendant. In this appeal the plaintiff contends her case was prejudiced by certain erroneous rulings by the trial court and by unfair tactics employed by opposing counsel.

The plaintiff's claim is based on a "rear end" collision at 65th Street and Route 83 in Du Page County about 7 p.m. on August 11, 1972. While she was stopped awaiting a change in the traffic signal, the defendant's automobile came up behind the plaintiff and struck her automobile. The defendant admitted fault for whatever damage was done but contended he merely "nudged" the plaintiff's car, moving it about three feet and causing very minor damage to the rear of the vehicle and none to his own automobile. While he testified the damage to the plaintiff's car was almost invisible he said she was obviously very upset and angry and berated him for his carelessness. The defendant was driving a friend's car at the time. After a discussion the defendant left without the police having been called to the scene. The defendant reported the incident to the police the next day and they advised him to pay the plaintiff's damages. The defendant thereupon went to the plaintiff's residence and offered to pay for the damage. He was presented with a bill in the amount of $117, which, he testified, was mostly for a new bumper, which he paid. His testimony was that the bumper had only been scratched and did not need

replacement and that any other damage on the repair bill he paid was old damage, not connected with the accident in question. He testified the plaintiff made no mention at the time of the accident of any personal injuries.

The plaintiff in her testimony said the impact was severe, "a very hard, solid impact"—as the result of which "my head went back against the headrest." She testified she was dazed for a moment, then she got out of the car and upon inspecting her car noticed "the panel under the trunk was dented, under the taillight, the right hand taillight, and a nick where it went up over the bumper of the car." She said the defendant claimed the damage had been done previously and pointed out some yellow paint around the damaged area, however this so-called yellow paint was really, according to the plaintiff, road dirt. Plaintiff admitted the taillight on her car was not broken. Plaintiff said she noticed "alcohol" on the defendant's breath when they were looking at the damage. Defendant denied he had been drinking.

Under cross-examination the plaintiff admitted she had not claimed any personal injuries at that time and that after reporting the incident to the local police station she had continued on her way to pick up two women friends in her car. After picking up the women the group proceeded to Wheeling where they attended a "Collie Club" meeting, the plaintiff being interested in showing Collie dogs. After leaving the meeting at about 11 p.m. the plaintiff picked up her husband in Northbrook, approximately 40 miles from her residence in Downers Grove, and the party then returned home to Downers Grove, sometime after midnight. Plaintiff testified that at the time she left the meeting in Wheeling, which was about 11 p.m., her arm and shoulder were beginning to hurt and that when she got home she took some Excedrin to relieve the pain in her arm and shoulder, that she did not sleep that night and she got up and walked around the house and took some more Excedrin.

While the plaintiff testified she had pain in her shoulder and a headache the next day, she did not consult a doctor immediately. She had been under treatment by a Doctor Hengge at the time of the accident in question "for a weight loss program and birth control pills." She did not consult Dr. Hengge until September 8, 1972, almost a full month after the accident, about any pain in her arm and shoulder. At that time Dr. Hengge took X rays and prescribed traction and massage, which treatment she continued until sometime in November. Dr. Hengge apparently left the United States and went to live in Germany about that time.

In January 1973 she consulted another physician, Dr. Burns, for symptoms she described as headache at the back of her head and pain in her lower back and shoulder. After seeing Dr. Burns she then consulted

with Dr. Phillips around April or May of 1973, and after that she saw Dr. Zettas, an orthopedist, for about a year for pains in her upper back, both arms and her lower back. Dr. Zettas referred her to a Dr. McNeill, whom she saw in February of 1974 for pains in her lower back. She also consulted with two other physicians, Dr. Ganch and Dr. Oester. In March, 1974, she had several tests including X ray, an EKG and a myelogram. During her testimony the plaintiff revealed that she had had an injury to her back some 18 years previous to the trial, as the result of a fall, and that in 1965 she had another injury to her back, resulting from steaming paper off a wall. She testified she had recovered from both previous back injuries and had not experienced any trouble with her back for five years previous to the accident of August 11, 1972.

The plaintiff also testified as to a diminution in her revenues from her dog grooming business because she could no longer lift and handle the dogs and that she had had employment at a plastic manufacturing plant from time to time, but had terminated her employment because of her back problem.

The plaintiff in this appeal presents some nine separate points which she says show improper conduct of the trial, resulting in prejudice to her case. Some of these are of little substance and require no extended comment. Objection is made to the use of the plaintiff's repair estimate in cross-examining her, without the person who prepared it being called. Inasmuch as this was the plaintiff's own repair bill and she accepted payment of it as representing the damage to her car, we see no substantial prejudice to her in this. She also objected to the reading of a report from Dr. Ganch on the ground that the problems he was consulted about were not connected with the injuries resulting from the incident of August 11, 1972, but were bladder problems. Since the plaintiff had testified to lower back pains and had adduced evidence in support of a claim for loss of business from her reduced dog grooming activities and for loss of wages from terminating her employment in the plastic factory, she had put the subject of her general health in issue in testifying as to reduced activities based on physicial problems and we think it was logical for defense counsel to refer to evidence bearing on other aspects of her health. Bladder troubles, for example, for which she admitted being tested, might logically be related to lower back pain which she was experiencing. The plaintiff admitted the tests—erroneously referred to in the first instance by defense counsel as operations—were conducted and we do not see any serious prejudice to her in the contents of this report. Plaintiff also complains about a question as to a date on which she entered Edward Hospital for minor surgery unrelated to her back injury and the incidental taking of her medical history at that time by Dr. Hengge. This question was objected to as being irrelevant, which objection was overruled. The

plaintiff denied indicating to Dr. Hengge at that time—which was before August 11, 1972, that she was experiencing groin and back problems. No further questions were asked and the hospital records were not proffered in evidence. Cross-examination then proceeded on an entirely different point. No objection, on the ground of unfair impeachment or lack of authentication, was made after the initial objection of irrelevancy was overruled and we do not see the present objection of lack of authentication of the hospital record as being of critical importance. The plaintiff contends improper tactics were employed in asking a question about groin and back problems and after her denial, not following it up with evidence to establish that such a statement was true. However, Dr. Hengge was residing in Germany at the time of the trial and not available for testimony. The plaintiff had testified in direct examination that her physician had taken her medical history and she had introduced his name into evidence, at the time being aware that he was living in Germany. Defense counsel may not have expected a denial when he asked the question and we cannot attribute bad faith to him in not following up, since Dr. Hengge was no longer available.

A more substantial question is raised as to defense counsel having read from a medical report of Dr. Zettas made in 1973 and directed to plaintiff's counsel, who furnished a copy of it to defense counsel. Plaintiff objected to defense counsel reading from the report on cross-examination but was overruled by the trial court who stated "this is cross-examination." Plaintiff objected that the report was hearsay and that it was improper evidence because of lack of authentication, and also that the doctor had not been called to testify in connection with the report.

Plaintiff cites this as another instance of laying the ground work for impeachment and then not following it up, a practice condemned in many Illinois cases. (See *Blake v. Delhotel* (1976), 39 Ill. App. 3d 725; *Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004.) The situation here, however, does not seem to us to be a clear cut instance of this objectionable practice. The plaintiff admitted she had slipped and fallen at the plastic factory in 1965 and that she had seen Dr. Zettas in connection with that accident. Dr. Zettas' report stated that he had seen the plaintiff for "symptoms *in the past* of right ankle injury, leg injury and neck injury." (Emphasis added.) Plaintiff's statement that she had not seen Dr. Zettas "for all the injuries at one time" did not contradict the report in question and her subsequent answer to the question whether the report was incorrect that "in the way he stated them [the symptoms] he was incorrect", implies that she was taking exception to the form of the report, rather than its content. Her last statement, "I only had an ankle problem" clearly referred to her symptoms due to the fall at the plastic factory in 1965, since she had previously testified that she had slipped and hurt her

ankle in that fall. This did not put in issue the correctness of the doctor's statement to the effect that the plaintiff had first been seen in his office in January 1965 for symptoms in the past of right ankle injury, leg injury and neck injury. While the plaintiff's previous direct testimony had only disclosed two previous injuries, both to her upper back, under cross-examination she readily admitted a third injury due to the fall in 1965 at the plastic manufacturing company. The doctor's report did not impeach this previous testimony since it referred to a leg injury, ankle injury and neck injury, and not to a back injury. The leg and ankle injury might well have been considered by the plaintiff as being irrelevant to the present case, and her testimony as to the neck injury was at best equivocal. We do not see any prior inconsistent statements therefore which the doctor's report had laid an impeaching foundation for.

We do however recognize the unfairness of asking a question which creates an unfavorable inference without any proof having been offered in support of the inference. (See *Miller v. Chicago Transit Authority* (1954), 3 Ill. App. 2d 223; *Ryan v. McEvoy* (1974), 20 Ill. App. 3d 562.) But in this case, the report did not, so far as we can see, cast doubt on any prior statement of the plaintiff regarding her injuries and it did not in any way contradict her direct testimony that she had fully recovered from her previous back injuries and had no complaints of back pain for five years preceding the incident of August 11, 1972. However, since the plaintiff by her testimony put in issue the accuracy of the statements made in the medical report to the effect that the plaintiff had seen Dr. Zettas in 1965 for a neck injury, the plaintiff had the right to request an instruction to the effect that this testimony should be entirely disregarded or to ask for a mistrial.

Plaintiff's counsel in a conference in chambers stated that since the plaintiff had denied the accuracy of the doctor's report it was incumbent upon the defense to produce Dr. Zettas as a witness and if he was not made available that the plaintiff would move for a mistrial.

Subsequently, however, plaintiff's counsel used the report in redirect examination of the plaintiff to reaffirm her testimony on cross-examination to the effect that a certain statement in Dr. Zettas' report concerning a neck injury was not accurate. In this redirect examination plaintiff's counsel questioned her directly as to the accuracy of the statement and she denied having had such symptoms.

■■ After the defense rested without having secured the presence of Dr. Zettas (although defense counsel stated to the court that he had made a good faith effort to do so), plaintiff's counsel first asked for an instruction that all reference to Dr. Zettas' report be stricken and the jury told to disregard it. He then withdrew that instruction and again moved for a mistrial. The motion was denied. In view of the report in question having

been furnished to the plaintiff by her own doctor and plaintiff's counsel having furnished it to the defendant, we think it was within the court's discretion to allow it to be used in cross-examination touching on the general area of the plaintiff's past injuries over a period of years. The question of it not being subject to proper authentication by direct testimony of Dr. Zettas himself is not, in our opinion, a basis for a mistrial, considering that the report was furnished to the defense by plaintiff's attorney and was used later by him in redirect examination of the plaintiff. In any event, the possibility of a neck injury some eight years before the incident in question does not seem to be of critical importance in either proving or disproving that the plaintiff's lower back problems— the main burden of her complaint—resulted from the accident of August 11, 1972. Any impact on the plaintiff's credibility resulted from her own equivocal answers rather than from the statements in Dr. Zettas' report. The decision whether or not to grant a motion for a mistrial based on improper and prejudicial evidence is within the discretion of the trial court based on the particular circumstances of the case (*Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306; *Stuart v. Rahn* (1974), 16 Ill. App. 3d 315), and under the circumstances of this case we think the discretion was properly exercised.

■■ Objection is made to several other alleged instances of improper attempts to impeach or discredit the plaintiff by asking questions with a negative inference which were not followed up by supporting evidence. For example, defense counsel asked the plaintiff if it was not a fact that she did not complain of any personal injury to the Willowbrook police officer at the time she reported the collision to the rear end of her automobile to him. To the question the plaintiff replied that she did not recall whether she did or not. We do not think this equivocal answer required the defense to call the police officer. (See *Vancil v. Fletcher* (1967), 90 Ill. App. 2d 277.) The plaintiff had never made any prior statement on this point and it was not inferred that she had and nothing was denied. Since the plaintiff had testified in direct examination that she had reported the incident in question to the Willowbrook police immediately after it happened and inasmuch as it would have been logical for her to have mentioned any personal injuries she suffered, if she had sustained any, the leading form of the question in this case was not, we think, beyond the limits of proper cross-examination.

Likewise, defense counsel in cross-examination asked whether it was a fair statement that no doctor had recommended that she stop working, to which she replied, "No," apparently meaning that it was not a fair statement. In the face of this reply, defense counsel read plaintiff's previous deposition which indicated that she had never asked the doctor, "If I shouldn't work," and "they never said it [that she should not work]."

We see no objection to this as being improper impeachment. Defense counsel was not obliged to leave plaintiff's "No" stand as given when it might be reasonably construed as being at variance with her previous deposition.

■■ Other instances of improper cross-examination are cited by the plaintiff on the ground of irrelevancy. However, these concerned medical problems which might affect either the main back problem or the extent to which her general health contributed to a claimed loss of earnings and we feel the evidence was within the discretion of the trial court to admit, if he saw any connection with the issues raised in the plaintiff's case. There is mention of some 12 doctors in the plaintiff's testimony and since she was making claim for loss of revenue from her dog grooming business, pay for assistance therein, and loss of wages at the plastic factory, as part of her damages for the incident of August 11, 1972, the possibility of a connection between her other ailments and this aspect of her claim provides reasonable latitude for inquiry along these lines.

Another point of appeal is that one of plaintiff's witnesses, Dr. McNeill, was not allowed to testify directly as to his opinion of whether there was a causal connection between the automobile accident of August 11, 1972, and plaintiff's back condition, described by the doctor as nerve root irritation associated with a ruptured disc, at the time he examined her in 1974. Instead of giving a direct opinion, the doctor was required by the ruling of the court, due to the lapse of time and the evidence of previous injuries, to give his answer in the form of a hypothetical question which took into account the fact of the incident of August 11, 1972, and the plaintiff's previous history.

■■ We see no error in this. In view of plaintiff's previous history it was proper to make the doctor's opinion responsive to the peculiar facts at hand. We do not believe any prejudice resulted to the plaintiff from this ruling. Within the framework of the hypothetical question the answer was favorable to the plaintiff.

Other objections as to the conduct of the trial judge and of defense counsel we do not find to be merited, nor in any event of substantial impact on the case.

The many evidentiary errors suggested by the plaintiff on this appeal implies that she did not receive a fair trial. We think she did and a careful review of the evidence suggests that it was the weakness of the plaintiff's case and not the unfair tactics of the defense which caused the verdict for the defendant. The evidence clearly established a chronic back problem but it was necessary to convince the jury that her present back troubles resulted from the rather minor collision of August 11, 1972. Her previous medical history threw doubt on this and apparently the jury did not accept the incident of August 11, 1972, and the "disc" problem in her back

as being cause and effect. We think the jury's verdict was consistent with the evidence.

The judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

SEIDENFELD and BOYLE, JJ., concur.