RUBEN DOMENA, Plaintiff-Appellee, *v.* W. WOOD PRINCE
*et al.*, Trustees, *et al.*, Defendants-Appellants.

Second District   No. 76-146

Opinion filed September 7, 1977.—Rehearing denied October 12, 1977.

A. G. Hubbard, Frederick W. Temple, and Paul V. Kaulas, all of Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellants.

Donovan, Atten, Mountcastle, Roberts & DaRosa, of Wheaton, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff brought this action against defendants under the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, pars. 60 through 69) and the jury returned verdicts in favor of plaintiff against both defendants in the amount of $100,000. Defendants appeal.

The plaintiff, Ruben Domena, was a bricklayer's helper employed by Wil-Mar Mason Contractors who were engaged in the erection of masonry walls for a warehouse building being constructed in Kane County, Illinois. Defendants W. Wood Prince and James F. Donovan, as trustees of Central Manufacturing District, were the owners of the building and defendant CMD Construction Company was the general contractor for its construction.

On February 11, 1970, plaintiff was working on a Morgen scaffold some 15 to 18 feet above the ground when the Morgen plank, an integral portion of the scaffold, fell from under him as he stepped on it leaving a

10-inch-wide opening some 7 feet long in the scaffold through which plaintiff fell to the ground and was injured. Defendants contend on appeal that plaintiff failed to prove by competent evidence any violation of the Structural Work Act or that either defendant was in charge of the work when the injury occurred or wilfully violated the Act.

A somewhat detailed description of the Morgen scaffold is necessary to an understanding of defendants' first contention. It is constructed of 20-foot-tall steel towers which are erected in pairs 7 feet apart parallel to the working area. Each pair of towers has, or should have, a cross-brace and stringer braces extending between them for stability and to maintain the requisite 7 feet between the towers. There are support brackets or arms extending on both the wall side and the outside of each tower upon which planks may be placed from tower to tower to form platforms for the workers. The platform next to the wall is used by the bricklayers and consists of three 10-inch-wide planks. The outside platform is used by the bricklayers' helpers, such as plaintiff, and is made up of seven 10-inch-wide planks, including the Morgen plank, which fits directly between the towers. The Morgen plank is a 2- by 10-inch plank designed to be exactly 6 feet 11 inches long and its ends to rest upon and be supported by 4-inch-long steel brackets protruding from each tower for that purpose. Neither end of the plank is secured to those brackets but is intended to be held in place by the maintenance of the 7-foot interval between towers and the correctness of the length of the plank so that its ends would safely rest on both tower brackets. The brackets and support arms described can be mechanically elevated at each tower to raise the working surfaces of the scaffold as the wall is constructed.

The scaffold had been supplied and erected on the job by plaintiff's employer, Wil-Mar, when the mason work commenced 3 weeks before the injury and while working upon it over that period plaintiff noticed no defect in it. On February 11, 1970, plaintiff was carrying an 8-inch building block in each hand and walking from the outside platform to the inner to supply the bricklayers when he stepped on the Morgen plank and it fell with him to the ground. Plaintiff reached for something to grasp to prevent his fall but there was nothing; outside railings are used at times on Morgen scaffolds but were not present on the day of this accident.

Defendants assert first that the trial court committed prejudicial error in permitting Harry Scoggin, called by plaintiff to testify as an expert witness, to suggest through guess and conjecture reasons why the Morgen plank fell.

The qualifications of Scoggin as an expert were not challenged in trial by defendants. He was an architect and engineer who had examined Morgen scaffolds 25 to 50 times prior to this trial and was familiar with their construction and use although he had never examined the particular

Morgen scaffold being considered in this case. Scoggin testified that a Morgen scaffold was a properly designed and safe scaffold when erected and used in accordance with its manufacturer's directions. Over defendants' objection, he was permitted to testify that the stability of a Morgen scaffold depended upon the cross-bracing between the support towers to hold them 7 feet apart and upon the Morgen plank being cut to the correct length so as to permit its ends to rest safely on the tower brackets. The witness further testified there were two other factors which could affect the security of a Morgen plank: that the supports on the towers at each end of the plank should not be raised to different levels and that a heavy weight on the plank will cause it to sag in the middle. Both factors, if present, would have the effect of shortening the plank and the support under its ends.

After testifying that the length of the Morgen plank, the cross-bracing between the towers and the support brackets for the plank ends on the towers were the only structural features of a Morgen scaffold which come into play regarding support of the plank, the witness was permitted to testify, over objection, that in his opinion the Morgen plank would not fall on a Morgen scaffold when stepped on by a laborer if these factors were all in order.

Defendants contend that the length of the Morgen plank when it fell, whether bracing was missing between the towers and whether one end of the scaffold had been raised higher than the other were not matters to be established by expert opinion, but only by direct evidence. They argue that the opinion of an expert witness may properly be allowed only if based upon facts in evidence called to his attention or facts within the personal knowledge of the witness and that he may not be permitted to express an opinion as to why the plank fell based upon his guess, speculation or conjecture, citing 18 Ill. L. & Prac. *Evidence* §329 (1956); *Jines v. Greyhound Corp.* (1965), 33 Ill. 2d 83, 88, 210 N.E.2d 562, 565; and *Sommers v. American Economy Insurance Co.* (1972), 8 Ill. App. 3d 450, 452, 289 N.E.2d 712, 714.

■■ We note that Scoggin did not express any opinion as to how this accident occurred, why this plank fell or in what manner this Morgen scaffold may have been defective at the time of plaintiff's injury. He did, in substantial detail, describe the structural features of Morgen scaffolds and those features which, in his opinion, affected the stability of such a scaffold. All of his testimony was based solely upon his personal knowledge and experience as an architect and engineer with Morgen scaffolds and cannot correctly be described as guess, speculation or conjecture. His testimony was clear that a properly constructed and operated Morgen scaffold was sound and stable; this, of course, was the defendants' posture in the case. In view of the uncontroverted evidence

that the plank fell when plaintiff stepped upon it, a thorough explanation by an expert of the structure of such a scaffold was in order for the better understanding of the jury.

"[T]he trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where difficult of comprehension and explanation." *Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516, 211 N.E.2d 733, 734.

"There must be a need apparent from the record in the case for scientific knowledge, expertise and experience which will aid the jury to a correct and a just result." *Abramson v. Levinson* (1969), 112 Ill. App. 2d 42, 50, 250 N.E.2d 796, 800, *cert. den.* (1970), 398 U.S. 950, 26 L. Ed. 2d 290, 90 S. Ct. 1868. See also *Mahlstedt v. Ideal Lighting Co.* (1915), 271 Ill. 154, 110 N.E. 795; *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483; *Gatto v. Curtis* (1972), 6 Ill. App. 3d 714, 286 N.E.2d 541.

The trial court did not err in overruling the objections by defendants to the testimony of this witness and the arguments to the jury based upon it.

Defendants next contend that plaintiff failed to prove a violation of the Structural Work Act by them in that the falling of the plank from the scaffold does not establish the scaffold was defective and no other defect has been shown by the evidence.

The relevant provision of the Act states that:

"[A]ll scaffolds * * * erected or constructed by any person, firm or corporation in this State for the use in the erection * * * of any * * * structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be o erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon * * *." Ill. Rev. Stat. 1969, ch. 48, par. 60.

■■ ■ Defendants rely upon strict product liability and negligence cases (*Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 336 N.E.2d 338; *Larson v. Thomashow* (1974), 17 Ill. App. 3d 208, 307 N.E.2d 707; and *Haas v. Buick Motor Division* (1959), 20 Ill. App. 2d 448, 156 N.E.2d 263). The Scaffold Act, as it is commonly called, is not directed towards a "defective" scaffold as that term is considered in those cases. The Act provides that those charged with a duty towards persons employed upon scaffolds shall provide a "safe, suitable and proper" scaffold so as to give "proper and adequate" protection to them. The statute does not define what shall constitute a safe, suitable and proper scaffold and the cases hold that generally the question is one of fact to be

left for determination by the jury. *Doherty v. National Casting Division, Midland-Ross Corp.* (1972), 6 Ill. App. 3d 329, 334, 285 N.E.2d 537, 541; *Walden v. Schillmoeller & Krofl Co.* (1969), 111 Ill. App. 2d 95, 99, 248 N.E.2d 547, 549; *Oldham v. Kubinski* (1962), 37 Ill. App. 2d 65, 87, 185 N.E.2d 270, 279; *Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 166, 106 N.E. 236, 240.

■■ In this case there was evidence that the Morgen plank connecting the scaffold towers fell when plaintiff stepped upon it. There was also testimony from which the jury might conclude that cross-bracing between the towers was not present below the plank and evidence that while railings are sometimes used on these scaffolds, none were in place on the day in question. In considering the evidence presented, both direct and circumstantial, concerning the condition of the scaffold in question and the factors affecting its stability, we cannot say that when viewed most favorably to the plaintiff it so overwhelmingly favored defendants that a contrary verdict could not stand. In that circumstance defendants are not entitled to judgment notwithstanding the verdict reached by the jury. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Defendants next contend there is no evidence that any violation of the Structural Work Act was wilful on their part.

■■ Our supreme court has held that the term "wilful" as used in the Act means "knowingly" (*Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134) and that a defendant is presumed to know that which he could have reasonably discovered (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630). The jury must then consider the evidence to determine whether a defendant could have, by the exercise of reasonable care, ascertained the existence of a dangerous condition in the scaffold. (*Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 897, 289 N.E.2d 12, 18.) There is evidence which would justify the jury in concluding defendants could have reasonably determined cross-bracing was missing from the scaffold, the Morgen plank was not adequately supported at its ends or necessary railings were not in place. These deficiencies, if any existed, would be readily apparent by the most casual of inspections by defendants' representatives who were regularly on the job site for that purpose. Again applying the *Pedrick* test, we find defendants are not entitled to judgment *n.o.v.* as to this issue.

■■ Defendants each also contend they were not "in charge" of the construction operation in which plaintiff was injured. The Structural Work Act imposes liability for wilful violations of the act upon "[a]ny owner, contractor * * * or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building

\* \* \* or other structure within the provisions of this act \* \* \*." (Ill. Rev. Stat. 1969, ch. 48, par. 69.) The term "having charge of" has not been specifically defined beyond the commonly understood meaning of the words used (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 323, 211 N.E.2d 247, 252), and whether one or more defendants may be considered to "have charge of" the work within the meaning of the Act is primarily a factual question for the jury (*Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, 525, 328 N.E.2d 297, 300; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785).

■■ In the instant case, defendant Central Manufacturing District was a Massachusetts trust authorized to do business in the State of Illinois as an industrial developer. As such, it constructed factories and plants and was so doing on the 750-acre site it owned and upon which it was having constructed the warehouse worked upon by plaintiff. This defendant, in turn, organized defendant CMD Construction Company, an Illinois corporation, for the purpose of constructing, inspecting and maintaining industrial buildings and CMD was the general contractor for the warehouse construction in this case. James F. Donovan, who was a trustee of the first defendant, was also president of the second defendant.

Edward Krauklis was chief engineer for defendant Central Manufacturing District and was in charge of its building projects. His duties included visiting the job site, inspecting it and reporting thereon to his employer. He would determine whether construction was proceeding according to schedule and would approve payouts to the contractors. Krauklis had a right to stop the work if he saw unsafe methods being used in construction.

William Allas was field superintendant for defendant CMD Construction Company and his duties were to oversee the construction project. This included advising the contractors if the work was not being performed safely and ordering corrections. On several occasions he directed contractors to correct unsafe conditions and instructed them regarding safety requirements. If a contractor did not follow Allas' instructions he would report it to his superior in his company, Elliott Sproul, Sr., who had supreme authority.

We believe that under the totality of these circumstances the jury might properly have concluded each of these defendants was "in charge" of the warehouse construction and the scaffold used to that end within the meaning of the Structural Work Act. See *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868; *Buehler v. Toynan Construction Co.* (1972), 52 Ill. 2d 214, 287 N.E.2d 691; *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247; *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134.

The defendants' final contention is that prejudicial error occurred when

plaintiff laid a foundation for impeachment of a witness called by defendants without following it up with proof.

This issue was first raised on appeal in plaintiff's brief where he argued that Benjamin Vidlak, a bricklayer foreman employed by Wil-Mar Mason Contractors, who testified that the Morgen plank in question was of a proper length, was impeached on cross-examination by his prior inconsistent statement made before trial that he didn't know how long the plank was. Defendants, in their reply brief, responded by asserting for the first time on appeal that it was prejudicial error to attempt impeachment of the witness and not follow through with proof of the suggested impeaching statement. (*Sesemann v. Ellington* (1977), 51 Ill. App. 3d 790, 367 N.E.2d 219; *Blake v. Delhotel* (1976), 39 Ill. App. 3d 725, 350 N.E.2d 880; *Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491.) The witness did respond in trial that he did not recall making the prior statement and plaintiff did fail to introduce evidence of such a statement to complete impeachment.

In context, however, there was no impeachment of the witness thus no necessity for plaintiff to produce other evidence and no basis for plaintiff's claim of impeachment in his brief. As stated by defendants in their post-trial motion, Vidlak had testified that following the accident he had measured the plank, which was then laying on the ground under the scaffold beside the plaintiff, and it was 6 feet 11 inches in length (the proper length of a Morgen plank). In plaintiff's cross-examination of the witness a statement made by him to an investigator was read to him, as follows,

> "MR. DYER: Question: 'Do you recall what the dimensions are?' Answer: 'That plank I couldn't tell you exactly in inches. These planks are special cut. No other use for six feet eleven planks on the job. It just won't work.' Do you recall giving that answer?
>
> A: Specifically I do not recall.
>
> MR. KAULAS: At this time, your Honor, I move that the question and answer be stricken.
>
> THE COURT: Overruled."

The assignment of error urged by defendants in their post-trial motion was that the court erred in allowing the "attempted impeachment" of Vidlak to stand, arguing that in context the witness was referring to the dimensions of the plank before being cut to six feet 11 inches so that his prior answer was not contrary to his testimony in trial and not impeaching. We agree with defendants' analysis of the issue made in their post-trial motion and also agree with the trial court's ruling on that motion that it was not prejudicial error to deny defendants' motion to strike the question and answer in trial.

Defendants did not again raise this issue in their initial briefs on appeal

either in the form presented to the trial court or as to the separate issue presented for the first time here in their reply brief. As now presented the issue is not properly before us for review as a party may not urge as error on review any point, ground or relief not specified in his post-trial motion (Ill. Rev. Stat. 1969, ch. 110, par. 68.1(2); *Taskay v. Foschi Brothers Inc.* (1976), 44 Ill. App. 3d 707, 712, 358 N.E.2d 730, 734), and, in any event, the witness was not impeached and no prejudicial error occurred as a result of the ruling by the trial court.

We conclude that the trial court correctly denied the post-trial motion of each defendant for a new trial and for judgment *n.o.v.* and, accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.