**Edward Burgh, Plaintiff-Appellee, v. Crane Construction Company, Inc., a Corporation, Defendant-Appellant.**

**Gen. No. 52,261.**

First District.
November 14, 1968.

Querrey, Harrow, Gulanick & Kennedy, of Chicago (John T. Kennedy and Joseph Harrow, of counsel), for appellant.

Robert J. Millman, of Chicago (Harry G. Fins and Sidney Z. Karasik, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This is an appeal from a jury verdict rendered in favor of the plaintiff, Edward Burgh against the defendant, Crane Construction Company, Inc., a corporation. The action was based upon violations of the Structural Work Act (Ill Rev Stats 1959, c 48, § 60 et seq.).

In November, 1960, the Executive House, a hotel in Chicago, undertook certain improvements. They hired the defendant construction company and the defendant in turn hired a subcontractor which employed the plaintiff. The plaintiff's place of work was on the 39th floor of the building where he was engaged in installing a terrace deck. The plaintiff reached his place of work by means of an outside hoist which consisted of a cage operating within an open frame tower. The permit granted by the City of Chicago for the use of the hoist prohibited passengers, but it was the practice of the defendant to use the hoist for the transportation of both workmen and materials. The cage itself was enclosed and had a door at the entrance, but there were no gates or doors at the openings of the shaft at each floor; there was simply a bar across the shaft but the bar was a part of the frame structure and could not be removed or operated as a gate. The roof on the 39th floor had a substantial overhang and a person standing on that floor could not see the building above him because of the overhanging roof.

The hoist or car was operated by an engineer on the 6th floor of the building and a man rode the car as operator, communicating with the engineer by a two-way radio. While the hoist ran above the 39th floor where the plaintiff worked, there was no warning sign to that effect and the plaintiff was never told that the hoist ran above the 39th floor, nor did he know that fact.

In practice when a workman wanted to communicate with the operator of the hoist he would tap on the piping of the structure with some object, thereby attracting the

operator's attention. There was no bell arrangement to signal the operator of the hoist.

The defendant claimed that there was a telephone mounted on the wall of the 39th floor which provided a direct connection with the engineer operating the hoist. Defendant's superintendent testified that he had never seen the telephone used and did not know if any of the workmen knew of the existence of the telephone. The plaintiff testified that no one informed him of the telephone and that he never saw the phone. The defendant offered certain photographs, taken on December 12th, showing the telephone but admitted that in photographs taken six days prior the telephone does not appear. In answer to an interrogatory, the president of the defendant said under oath that there was no signal system between any floor and the engineer operating the hoist. This answer was subsequently amended to indicate that there was a telephone on the 39th floor, but the matter remained in dispute and, as we shall see, the jury found against the defendant on the issue.

The plaintiff had only worked at this job a few days prior to Monday, November 21, 1960. On that day, some time after arriving on the 39th floor, he went to the hoist and tapped on the pipe to attract the attention of the operator. When the hoist did not come he looked down into the shaft and was struck on the back of the head by the descending hoist, causing severe injuries.

This action was brought alleging that the hoist was constructed or placed in an unsafe and improper manner and that the system of communications was not adequate. The case was tried to a jury on those issues and the jury rendered a verdict in favor of the plaintiff in the sum of $65,500. Plaintiff had entered into a covenant not to sue other defendants and had received $3,000; as a result the trial court entered judgment for $62,500.

The defendant brings the case to this Court urging that there was no defect in the hoist or in the communications system and, therefore, no violation of the Structural Work Act; that various instructions given by the trial court were incorrect; and, that plaintiff's counsel was guilty of improper argument.

Section 1 of the Structural Work Act (Ill Rev Stats 1959, c 48, § 60) provides in part:

". . . (A)ll scaffolds, hoists . . . erected or constructed by any person, firm or corporation in this State . . . shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under, or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

The defendant argues that there was no defect in the hoist and that the hoist was operating in the manner in which it was intended to operate. The defendant further claims that the only cause of the injury was the act of the plaintiff in inserting his head into the shaft and that to affirm the judgment in this case would be to create absolute liability under the Structural Work Act. ■■ We agree with the defendant that the Structural Work Act does not impose absolute liability. In an exhaustive opinion our Supreme Court considered the history of the Structural Work Act in Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 317 et seq., 175 NE2d 785 (1961). In that case the Court pointed out that the Structural Work Act was adopted in 1907, some four years before the Illinois Workmen's Compensation Act. The Structural Work Act was adopted to give protection to workmen engaged in extrahazardous occupations, and one of the essential purposes of the Act

was to remove contributory negligence as a defense. The feature of absolute liability did not come into the law until 1911, upon the adoption of the Workmen's Compensation Act. That feature was never incorporated into the Structural Work Act and did not exist at the time that Act was passed. Therefore, we agree that the Structural Work Act does not provide for absolute liability and there must be some violation of the Act for the plaintiff to recover.

█ In this case, however, it seems clear to us that there were violations of the Structural Work Act and the plaintiff is entitled to recover. In the case of Louis v. Barenfanger, 81 Ill App2d 104, 226 NE2d 85 (1967), affirmed in 39 Ill2d 445, 236 NE2d 724 (1968), the Court said at page 109, "Obviously the failure to properly place a scaffold or support is as much an actionable violation of the Structural Work Act as is the failure to properly construct, erect or operate a scaffold or mechanical contrivance." The goal of the Structural Work Act is to provide workmen in these extrahazardous occupations with a safe place to work, Bounougias v. Republic Steel Corp., 77 F2d 726. The whole body of law in this field indicates a tendency on the part of the courts to provide a liberal construction of the statute with this end in mind.

It is obvious to us that one must examine the entire picture. One cannot isolate the hoist and ignore an inadequate communication system or the circumstances under which the plaintiff was working and the information he was given, which in this case was very meager.

█ The Structural Work Act requires a safe, suitable and proper scaffold. It does not specifically say what would constitute such a scaffold because circumstances vary with each case. That question is necessarily left to the jury, Dinschel v. United States Gypsum Co., 83 Ill App2d 466, 477, 228 NE2d 106 (1967). In this case the safety of the structure became, under all of the evi-

dence, a question of fact for the jury. The jury found in favor of the plaintiff and their decision is based upon substantial evidence. Under those circumstances we have no authority to overturn their judgment.

Section 7a of the Structural Work Act (Ill Rev Stats 1959, c 48, § 67) provides in part as follows:

"If elevating machines or hoisting apparatus . . . are used in the construction, alteration or removal of any building or other structure, a complete and adequate system of communication by means of signals shall be provided and maintained . . . in order that prompt and effective communication may be had at all times between the operator of engine or motive power of such elevating machine or hoisting apparatus, and the employes or persons engaged thereon or in using or operating the same."

In this case the only system of communication which the plaintiff knew about was extremely crude. In this day and age it is obvious that the defendant could have had a better means of communication than simply rapping on a pipe to summon the elevator. There was sufficient evidence from which the jury could properly find that knocking on the pipe was the only means of communication. There is a factual dispute as to whether or not a telephone had ever been installed at the time of the accident and, in his original answer to an interrogatory, the defendant admitted under oath that there was no such means of communication. While he subsequently changed his story, the jury had the right under the evidence to believe the first answer and not the second.

In short, provisions for communication were less than adequate in this case. In the construction of the hoist itself the defendant could have provided a gate on the opening to the shaft which would have prevented the accident. From these facts the jury could reasonably conclude that there was a violation of both sections of

the Act in question. Gundich v. Emerson-Comstock Co., 21 Ill2d 117, 129–131, 171 NE2d 60 (1961).

■ The defendant next complains that the court erred in instructing the jury since the court gave instructions on both of the plaintiff's theories of violation of the Act. However, as we have indicated there was evidence of violations of both sections of the Act and, therefore, it was proper to instruct the jury on both of those questions. Indeed, a portion of some of these instructions of which the defendant now complains were offered by the defendant himself and, of course, a person cannot complain if the court gives his own instructions. People v. Riley, 31 Ill2d 490, 495–496, 202 NE2d 531 (1964); Sola v. City of Chicago, 82 Ill App2d 266, 275, 227 NE2d 102 (1967).

■ Finally, defendant complains of improper argument by plaintiff's counsel. The purpose of a closing argument is to draw together all of the facts and present the theories of the litigants so that the jury may make a proper decision. While it is true that counsel should avoid improper comment, they are to be permitted sufficient leeway within the evidence already presented so as to properly present their theories. Hopwood v. Thomas Hoist Co., 71 Ill App2d 434, 443–444, 219 NE2d 76 (1966).

We have examined the entire record and find that the trial judge properly controlled the proceedings, properly instructed the jury and that there was no conduct or comment on the part of counsel prejudicial to either side.

■ In conclusion, a word about the case as a whole. We are not to be understood as concluding that the Illinois Structural Work Act imposes absolute liability. Indeed, in our view, it does not. Under the facts of this case the jury would properly find that there were violations of the Structural Work Act causing injury to this

plaintiff. They did make those findings and we are not at liberty to substitute our judgment for theirs.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.