FRANK ZIZZO, Plaintiff-Appellee, *v.* BEN PEKIN CORPORATION *et al.*, Defendants.—(BEN PEKIN CORPORATION, Defendant-Appellant and Third-Party Plaintiff-Appellee, *v.* MARINO PLUMBING COMPANY, Third-Party Defendant-Appellant.)

*First District (3rd Division)* No. 77-1678

Opinion filed December 12, 1979.

Sam L. Miller, of Chicago, for appellant Ben Pekin Corporation.

Robert Marc Chemiers and Joseph Lederleitner, both of Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellant Marino Plumbing Company.

Joseph M. Fasano and Sidney Z. Karasik, both of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
Frank Zizzo brought this action pursuant to the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60, *et seq.*) to recover damages for personal injuries which he suffered while working on a construction project. A jury in the Circuit Court of Cook County returned a verdict in favor of the plaintiff and against the general contractor, Ben Pekin Corporation, in the amount of $125,000. The jury also returned a verdict on the third-party complaint in favor of Ben Pekin Corporation and against Marino Plumbing Company, the plaintiff's employer. The trial court entered judgments on the verdict. Ben Pekin Corporation appeals that portion of the order which entered judgment against it in the amount of $125,000. Marino Plumbing Company appeals from an order denying

its post-trial motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

The following issues are raised on appeal:

1. Whether Ben Pekin Corporation failed to provide the plaintiff with a safe and suitable scaffold upon which to perform his work.

2. Whether Ben Pekin Corporation's conduct was the proximate cause of the plaintiff's injury.

3. Whether Ben Pekin Corporation wilfully violated the Structural Work Act.

4. Whether the trial court erred in refusing to grant judgment notwithstanding the verdict in favor of Ben Pekin Corporation.

5. Whether the verdict against Ben Pekin Corporation is against the manifest weight of the evidence.

6. Whether the verdict in favor of Ben Pekin Corporation and against Marino Plumbing Company is against the manifest weight of the evidence.

The plaintiff claims that several points raised in Ben Pekin's brief were not preserved for review because they were not particularly specified in the post-trial motions. The plaintiff, however, does not specify to which issues he is referring. Although there is an absence of detail in these motions, we believe the points raised by Ben Pekin were sufficiently specific to preserve the issues for our review.

On October 21, 1970, the plaintiff, a journeyman plumber, was employed by Marino Plumbing Company and was working on the construction of the Hammond-Columbia Refrigerated Warehouse located at 4551 South Racine Avenue in Chicago. Ben Pekin Corporation was the general contractor in charge of the construction of the warehouse.

On that day the plaintiff and Thomas Hein, another employee of Marino, were working with Gerald Selemi, Marino's foreman, in the engine room of the warehouse. Their assignment was to install 8-inch water main pipes which were to be suspended from the ceiling of the engine room.

The plaintiff testified concerning the various equipment Marino used to install overhead ceiling pipes. Marino owned a 5-foot by 8-foot rolling scaffold, as well as an Econo-ladder, a mobile ladder which could be cranked up to different heights. The Econo-ladder had a wood platform with a safety rail upon which a worker could stand. A third piece of equipment used to install the pipe was the roust-a-bout, a mobile type crank used to raise the pipe to the ceiling. Marino also possessed a chain fall, a 60-pound pulley-type object which could raise the pipe to the ceiling.

The engine room in which the plumbers were working was very confined. The room contained machinery, and the aisles were cluttered

with pipes and equipment. In addition, other tradesmen were working in the room.

The plaintiff was instructed to use the chain fall to install the pipe. It was not possible to use either the rolling scaffold, the Econo-ladder or the roust-a-bout to attach the chain fall because these three devices were too large to use in the crowded work area.

Pursuant to the direction of Selemi, the plaintiff obtained a 14-foot A frame circular rung ladder which had been leaning against the wall in the engine room. Although the ladder did not belong to Marino, the plaintiff had used the ladder on previous occasions. The plaintiff opened the ladder and positioned it over a large piece of machinery.

The plaintiff climbed up the ladder and attached a beam clamp to an overhead beam in the ceiling upon which he would hook the chain fall. He also placed a rope over a pipe so that both ends of the rope dropped to the floor. Selemi and Hein tied one end of the rope around the chain fall and pulled on the other end of the rope, raising the chain fall to where the plaintiff was standing on the ladder.

The plaintiff was standing near the top of the ladder with one foot on the third rung and one foot on the fourth rung. He reached two feet to his right to pick up the chain fall and lift it over his head. When the plaintiff attempted to attach the chain fall to the beam clamp, he felt the ladder move and felt a pain in his back which ran down his leg. The plaintiff missed the beam clamp, his arm dropped down and the chain fall hit the top of the ladder. The plaintiff again attempted to lift the chain fall and felt "a stab in the spine and then like a shooting pain went down my leg." After resting for a moment, the plaintiff successfully attached the chain fall and continued to work the remainder of the day.

The pain in the plaintiff's back became more severe in subsequent days. After medication, bed rest, traction and physical therapy failed to alleviate the pain, the plaintiff eventually underwent an operation on his back. Despite the operation, the pain in the plaintiff's back and leg remains severe and, as a result, there are periods of time from one to three weeks during which he is unable to work. Because of his work record following his injury, the plaintiff is unable to obtain employment and is self-employed.

The plaintiff also testified concerning a prior operation on his spine. In 1956 he injured his back while lifting 300- to 400-pound valves. His back worsened over the years and in 1965 he underwent an operation. Subsequent to this surgery, the plaintiff engaged in strenuous work by unloading trucks and installing pipes. He encountered no problems with his back until his injury in 1970.

Dr. James W. Ryan, an orthopedic surgeon, testified that he treated the plaintiff for his 1970 back injury. Dr. Ryan stated that the plaintiff's

medical history indicated that he had surgery for disc problems, a laminectomy, approximately 5 years previous to his 1970 injury. In 1971 Dr. Ryan assisted a neurosurgeon who again performed a laminectomy upon the plaintiff. In Dr. Ryan's opinion, the second injury could have caused the flare-up of the plaintiff's previous disc problems. In addition, Dr. Ryan believed that the plaintiff's condition was permanent.

The plaintiff called J. B. Duke, Jr., to testify as an adverse witness. In October 1970, Duke was vice-president of the construction division of Ben Pekin Corporation. It was his responsibility to see that all the jobs that he was supervising were completed in a workmanlike manner. Duke spent 3 hours to 8 hours a day at the Hammond-Columbia construction site.

Duke testified that neither he nor Ben Pekin's foreman supervised the subcontractors in regard to safety. Ben Pekin did not initiate any safety program for this job or establish safety rules for the subcontractors. Duke also testified that although the foreman was not a safety inspector, he had the responsibility of that job. If Duke or the foreman observed an unsafe practice by a subcontractor, they would contact the subcontractor's foreman because union rules prohibited them from talking directly to the subcontractor's employees.

The plaintiff also called as an adverse witness James A. Mummert, the project manager for the architects of the construction, Globe Engineering Company. Mummert testified that the pipes could have been installed before the compressors, the machinery which was located in the engine room.

Louis S. Jacobs, an architect, engineer, planner and consulting safety engineer, testified as an expert witness on behalf of the plaintiff. Jacobs held a doctor of science and safety degree from Northern Indiana University.

In response to a hypothetical question from the plaintiff's counsel, Jacobs testified that a 14-foot ladder was not safe and proper for the type of work being performed at the construction site by the hypothetical plumber described in the question. He further stated that the practice in the industry is to provide scaffolding for strenuous types of work, such as lifting a 60-pound chain fall, which require exertion of stress and the use of all the faculties of the individual involved. With the use of a scaffold, the plumber could have placed both feet on the scaffold and used both arms to lift the 60-pound chain fall. Jacobs also referred to a standard published by the Associated General Contractors of America which provides that "step ladders should not be used where strenuous action on the part of the workman is required."

Jacobs was also asked to explain the critical-path method of scheduling subcontractors on a particular project. According to this

method of scheduling, overhead work must be completed before equipment is moved into the building so that the men working overhead do not have to climb over the equipment or work around it.

Jerry G. Stockbridge, manager of architectural services for a firm of consulting engineers and architects, testified as an expert witness on behalf of Ben Pekin Corporation. Stockbridge stated that it is the standard practice in the industry to install heavy equipment first.

In response to a hypothetical question, Stockbridge testified that there was nothing improper about using a ladder to install a chain fall. He indicated that it was a common and customary practice in this area to use a ladder for installations of chain falls. In addition, Stockbridge described the job of attaching a chain fall as not strenuous work. On cross-examination, however, Stockbridge admitted that it was his understanding of the hypothetical question that the chain fall was on a rope hanging over the plumber's head. His answer on direct examination did not consider the fact that the plumber had to raise the chain fall over his head.

Ben Pekin also presented an expert witness, Ralph L. Barnett, a full professor of mechanical and aerospace engineering at the Illinois Institute of Technology. Barnett testified that in his opinion the use of a 14-foot ladder to install the chain fall was a safe and practical means of doing the job. However, he qualified his opinion by stating that the ladder must have a step as opposed to a circular rung. In addition, Barnett testified that in his opinion the heavy equipment is installed prior to the installation of the pipe.

## I

Both Ben Pekin and Marino Plumbing argue that as a matter of law, Ben Pekin did not violate the Structural Work Act because the evidence did not establish that the ladder used by the plaintiff was defective or unsafe. They state that the evidence affirmatively reveals that the ladder did not break, fall or perform in any manner other than as ladders always perform.

Section 1 of the Structural Work Act provides, in pertinent part, as follows:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or

persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1969, ch. 48, par. 60.

■■ The purpose of this legislation is to provide protection for workmen engaged in extrahazardous work. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, *cert. denied* (1968), 393 U.S. 935, 21 L. Ed. 2d 271, 89 S. Ct. 295; *Wright v. Synergistics, Inc.* (1977), 52 Ill. App. 3d 233, 367 N.E.2d 466.) In order to accomplish this purpose, our courts have adopted a liberal construction of the Act. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 302 N.E.2d 64.) However, because the Act does not provide for absolute liability, there must be an actual violation of the Act before an injured plaintiff can recover. *Burgh v. Crane Construction Co.* (1968), 102 Ill. App. 2d 188, 243 N.E.2d 590.

We cannot say as a matter of law that the evidence reveals no violation of the Act. Although the defendant argues that the ladder was not defective, the purpose of the Act is not to protect the workmen from defective scaffolds. (*Domena v. Prince* (1977), 52 Ill. App. 3d 462, 367 N.E.2d 717.) The Act provides that workmen must be provided with a safe, suitable and proper scaffold which will furnish them with proper and adequate protection. Because the statute does not define what constitutes a safe, suitable and proper scaffold, this question is one of fact to be determined by the jury. *Domena v. Prince* (1977), 52 Ill. App. 3d 462, 367 N.E.2d 717; *Burgh v. Crane Construction Co.* (1968), 102 Ill. App. 2d 188, 243 N.E.2d 590.

■■ The plaintiff claimed that the ladder used was not safe and suitable for his assignment of installing the chain fall. His expert witness, Jacobs, testified that the ladder was an improper support for this job and that a scaffold would have enabled the worker to use both hands to lift the heavy chain fall. Therefore, it was a question of fact for the jury to determine whether Ben Pekin failed to provide the plaintiff with a safe and suitable scaffold.

Ben Pekin also argues that assuming the Econo-lift, rolling scaffold or roust-a-bout could have been used to install the chain fall, the evidence revealed that these devices would also sway as the ladder did. Ben Pekin contends that unrebutted testimony demonstrated that the ladder was the best piece of equipment for use under the circumstances.

Although the various witnesses testified that the other devices would also sway, the plaintiff's witness Jacobs maintained that the use of the ladder was improper because it did not provide sufficient support. The jury could have concluded that if the plaintiff had used a different device and had been able to lift carefully the chain fall with both hands, he would not have suffered a serious injury as the result of any sway.

■■ The fact that it was impossible to use the other devices because of the presence of the heavy machinery in the engine room is irrelevant. In *Lambert v. D. J. Velo & Co.* (1971), 131 Ill. App. 2d 30, 268 N.E.2d 170, the plaintiff, a roofer, was injured when he fell from the top of a building. The third-party defendant, the plaintiff's employer, argued that safety devices such as scaffolding or safety belts were not feasible and had never been used on such a roofing installation. Rejecting this argument, the court cited *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, for the proposition that the failure to provide scaffolding can be the basis of a cause of action under the Structural Work Act.

## II

Ben Pekin and Marino Plumbing argue that as a matter of law the conduct of Ben Pekin was not the proximate cause of the injury to the plaintiff. They maintain that the plaintiff's testimony reveals that he felt pain as he held the chain fall over his head and that the movement of the ladder had nothing to do with the pain.

The proximate cause of an injury is generally a question of fact for the jury. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497.) It becomes a question of law when the facts are undisputed and there exists no difference in the judgment of reasonable men regarding the inferences to be drawn therefrom. *Phillabaum v. Lake Erie & Western R.R. Co.* (1924), 315 Ill. 131, 145 N.E. 806; *Zerbenski v. Tagliarino* (1978), 67 Ill. App. 3d 166, 384 N.E.2d 753.

■ The plaintiff testified that after he had raised the chain fall over his head he felt the ladder move and experienced the pain in his back. The jury could have concluded that the movement of the ladder while the plaintiff held the chain fall over his head was the proximate cause of his injury.

■■ In addition, Ben Pekin and Marino argue that the plaintiff's physical condition was caused by his prior accident and accompanying surgery. Dr. Ryan testified that the injury could have caused the flare-up of the plaintiff's previous disc problems. However, the plaintiff testified that he encountered no problems with his back while engaging in strenuous work from the time of his surgery in 1965 until his injury in 1970. Therefore, this question is also one of fact to be determined by the jury. We note that it is the law in this State that a tortfeasor is liable for the injuries he causes, despite the fact that the injuries were aggravated by a pre-existing condition. *Balestri v. Highway & City Transportation, Inc.* (1978), 57 Ill. App. 3d 669, 373 N.E.2d 689; *Pozzie v. Mike Smith, Inc.* (1975), 33 Ill. App. 3d 343, 337 N.E.2d 450.

Ben Pekin and Marino Plumbing also argue that Dr. Ryan rendered his opinion based on a medical history contradictory to the facts of the

accident as testified to by the plaintiff. They point out that the plaintiff testified that the ladder moved while Dr. Ryan recalled that the plaintiff had experienced a twisting injury. Ben Pekin and Marino Plumbing conclude that Dr. Ryan was unaware that the ladder allegedly moved and that the plaintiff was lifting a heavy weight over his head.

The fact that Dr. Ryan characterized the plaintiff's accident as a twisting injury does not require the conclusion that he was unaware of the circumstances of the plaintiff's accident. If counsel believed that Dr. Ryan's opinion was based on misinformation they could have questioned him on cross-examination concerning this point.

In addition, we do not find the testimony of the plaintiff and Dr. Ryan contradictory. At the time of the injury the plaintiff was not standing in a balanced position on the ladder. He had placed one foot on the third rung and one foot on the fourth rung and was attempting to attach a 60-pound chain fall that he was holding in his right hand above his head. When the ladder moved, an observer could reasonably describe the motion of the plaintiff's body as a twisting movement.

A doctor's expert opinion need not be based on absolute certainty. (*Nowicki v. Union Starch & Refining Co.* (1971), 1 Ill. App. 3d 92, 272 N.E.2d 674, *rev'd on other grounds* (1973), 54 Ill. 2d 93, 296 N.E.2d 321.) It is sufficient that the opinion be founded on a reasonable degree of medical and scientific certainty that the accident could have caused the plaintiff's injury. (*Simon v. Lumbermens Mutual Casualty Co.* (1977), 53 Ill. App. 3d 380, 368 N.E.2d 344.) A review of the record convinces us that Dr. Ryan's testimony fulfills this requirement.

### III

Ben Pekin Corporation contends that the record reveals that it did not know and could not have reasonably known that the plaintiff was using the ladder to install the heavy pipe. It maintains that the record establishes that the workers had never used a ladder to install the chain fall prior to this incident and that the injury occurred immediately following the commencement of this use. Therefore, Ben Pekin argues that, as a matter of law, it did not wilfully violate the Structural Work Act.

Section 9 of the Act provides in pertinent part as follows:

> "For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * *." (Ill. Rev. Stat. 1969, ch. 48, par. 69.)

In order to constitute a wilful violation, it is not necessary that the defendant recklessly disregard the provisions of this act. The defendant is liable if he knows of the existence of the dangerous condition or, by the

exercise of reasonable care, he could have discovered said dangerous condition. (*Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134; *Doherty v. National Casting Division, Midland-Ross Corp.* (1972), 6 Ill. App. 3d 329, 285 N.E.2d 537.) Whether the defendant wilfully violated the Act is a question of fact for the jury. *Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 289 N.E.2d 12.

■■ J. B. Duke, Jr., Ben Pekin's vice-president in charge of the construction division, testified that he was present at the construction site at least three hours a day and that it was his responsibility to see that the work was completed in a workmanlike manner. In addition, Ben Pekin's foreman was present at the site at all times and had the responsibility for the prevention of accidents. The evidence was sufficient for a jury to conclude that both men must have observed the crowded condition of the engine room and realized, or should have realized, that the workmen would be unable to use a safe, suitable and proper scaffold for the pipe installation. Therefore, the question of whether Ben Pekin wilfully violated the Act was properly left for the jury.

Ben Pekin cites *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1960), 25 Ill. App. 2d 272, 167 N.E.2d 5, *rev'd on other grounds* (1961), 22 Ill. 2d 305, 175 N.E.2d 785, to support its contention that it could not have reasonably known of the plaintiff's use of the ladder. In *Gannon* the appellate court found that it was contrary to the manifest weight of the evidence for the jury to find a wilful violation of the Act because the defect in the ladder had been created only 10 to 20 minutes before the accident occurred. In *Gannon* the defendant railroad was the owner of the premises and none of its employees was present at the jobsite on the day of the accident. In addition, the appellate court concluded that the railroad exercised no supervision or control over the construction work. One can easily distinguish this factual situation from the facts in the instant case in which Ben Pekin, the independent contractor in charge of the construction, employed a full-time foreman who knew, or should have known, of the crowded condition of the engine room.

Additional cases cited by Ben Pekin are also distinguishable. In *Getz v. Del E. Webb Corp.* (1976), 38 Ill. App. 3d 880, 349 N.E.2d 682, the plaintiff was halfway between kneeling and standing on a scaffold when a fellow employee started to pull it from one place to another place. In *Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633, *aff'd* (1975), 61 Ill. 2d 151, 335 N.E.2d 10, the plaintiff fell through a hole in the floor when he removed the protective covering over the hole in an area without adequate lighting. In *Lavery v. Ridgeway House, Inc.* (1969), 117 Ill. App. 2d 176, 254 N.E.2d 117, the plaintiff truckdriver

injured his fingers when he rode a material hoist to the top of a building to advise the workers of his arrival.

These three cases were characterized by the court in *Moore v. Clearing Industrial District, Inc.* (1978), 64 Ill. App. 3d 391, 380 N.E.2d 1063, as cases in which "the plaintiff's own conduct was decisive and that conduct was of such short duration that it would be difficult to detect in time to prevent an injury. Moreover, in none of those cases was the condition which contributed to the plaintiff's injury in itself dangerous. It was only in connection with the plaintiffs' deliberate conduct that these conditions became 'dangerous." The instant case differs from these cases in that it was the continuing condition of the crowded engine room, not the plaintiff's deliberate conduct, which prevented the plaintiff from using a safe, suitable and proper scaffold.

## IV

Ben Pekin and Marino Plumbing maintain that the trial court erred in refusing to grant judgment notwithstanding the verdict in favor of Ben Pekin Corporation because the record is barren of any evidence of wilful violation and of any evidence of the cause of the plaintiff's injury.

■■ A motion for judgment notwithstanding the verdict should be entered only in those cases in which all of the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) However, as we discussed in parts II and III of this opinion, there was sufficient evidence to support the jury's conclusion of wilfulness and proximate cause. Therefore, we affirm the trial court's denial of a judgment notwithstanding the verdict.

## V

Ben Pekin and Marino Plumbing assert that the judgment in favor of the plaintiff should be reversed and the case remanded for a new trial because the verdict is against the manifest weight of the evidence.

A reviewing court will not set aside a jury verdict on the grounds that it is contrary to the manifest weight of the evidence unless it is obvious that the jury arrived at the wrong conclusion. (*Richard v. Illinois Bell Telephone Co.* (1978) 66 Ill. App. 3d 825, 383 N.E.2d 1242.) If there is evidence which supports the jury's verdict, this court should not interfere with that result. *Trauscht v. Gunkel* (1978), 58 Ill. App. 3d 509, 374 N.E.2d 843.

■■ As we have discussed earlier in this opinion, sufficient evidence was introduced to support the conclusion that Ben Pekin Corporation wilfully

violated the Structural Work Act, resulting in injury to the plaintiff. Therefore, we will not disturb the jury's verdict.

## VI

The jury also returned a verdict in favor of Ben Pekin Corporation in its third-party action against Marino Plumbing Company for indemnity. Marino Plumbing argues that this verdict is contrary to the manifest weight of the evidence and that Marino is entitled to a judgment notwithstanding the verdict.

■■ ■ Third-party indemnity is allowed to a tortfeasor whose misconduct is passive in comparison to the misconduct of another tortfeasor whose wrongdoing can be characterized as active and the primary cause of the plaintiff's injuries. (*Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58; *Carver v. Grossman* (1973), 55 Ill. 2d 507, 305 N.E.2d 161.) Before indemnification will be permitted there must be a qualitative distinction between the negligence of the two tortfeasors. (*Lindner v. Kelso Burnett Electric Co.* (1971), 133 Ill. App. 2d 305, 273 N.E.2d 196.) However, indemnification will not be granted when the first tortfeasor is actively negligent despite the active negligence of the other tortfeasor. (*Goodrick v. Bassick Co.* (1978), 58 Ill. App. 3d 447, 374 N.E.2d 1262; *Hanson v. Cresco Lines, Inc.* (1978), 57 Ill. App. 3d 168, 372 N.E.2d 936.) The issue of active-passive negligence and the imposition of third-party indemnity is a question of fact for the jury. *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868; see Bua, *Third Party Practice in Illinois: Express and Implied Indemnity*, 25 DePaul L. Rev. 287, 307 (1976).

Marino argues that Pekin's failure to provide a safe scaffold constituted active negligence. It claims that Pekin scheduled Marino to work in an area in which it was impossible to use the rolling scaffold, Econo-ladder or roust-a-bout, and that Pekin should have identified or furnished a more suitable scaffold. In addition, Marino asserts that there is a lack of evidence of a qualitative difference in the conduct of Pekin and Marino which would render Marino's conduct active and Pekin's conduct passive.

Pekin responds that Marino, as the employer, was in direct control of the plaintiff, that Pekin furnished no equipment for the use of Marino's employees, and that Pekin had no right to direct the work of Marino's employees. Pekin argues that *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868, controls the indemnity issue in this case.

In *McInerney* the jury returned a verdict in favor of the defendant against the plaintiff's employer on the claim of implied indemnity. The

trial court, however, entered judgment notwithstanding the verdict in favor of the employer. The supreme court reversed, stating:

"The jury could have accepted plaintiff's contention that Hasbrook [general contractor] failed to provide a suitable work area in which to conduct the painting. Yet Universal [plaintiff's employer] provided a foreman to supervise plaintiff's actual work who might have stopped the work if it was being performed in an unsafe manner under the existing conditions or modified the method in which the work was to be done, thereby preventing the occurrence. As previously noted, the record establishes that Hasbrook was not authorized to so act. Thus the misconduct of Hasbrook and Universal could be considered qualitatively dissimilar and the entry of a judgment n.o.v. in favor of Universal was improper." 62 Ill. 2d 93, 105.

██ We agree with Pekin concerning the similarities in *McInerney* and the case at bar. Marino provided a foreman who supervised the work of the plaintiff and who could have stopped the work. Also, it was Marino's foreman who directed the plaintiff to borrow the ladder and assisted him in the installation of the chain fall. We believe that the jury's determination that there was a qualitative difference in the misconduct of Pekin and Marino was not against the manifest weight of the evidence, and that the trial court properly denied Marino's motion for judgment notwithstanding the verdict.

Marino cites *Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 245 N.E.2d 618, for the proposition that the general contractor has no right to indemnity from the subcontractor when the contractor fails to provide a safe Structural Work Act device and a safe place to work. In this case, as distinguishable from the instant case, the trial court had determined that the general contractor was guilty of active negligence and not entitled to indemnity. On appeal the appellate court merely determined that this finding was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit Court of Cook County is hereby affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.