(No. 76-CC-1788—

JAMES H. MESKIMEN and PHYLLIS MESKIMEN, Claimants, *v.* THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 29, 1983.*

F. DON KELLY, for Claimants.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This is a claim against the State of Illinois as the result of the Claimant's foot slipping on a ladder. It is being brought under the Structural Work Act. Claimant is basically alleging violation of the Structural Work Act because of the manner in which the ladder on which Claimant was injured was constructed.

It appears that the accident involved occurred on May 3, 1975, at about 11:45 a.m. on a construction project known as I-474 bypass bridge in Bartonville, County of Peoria, State of Illinois. Claimant was working on said project as an employee of S. J. Groves & Sons Company, and Claimant's employer was hired by Respondent to aid in the erection and construction of said bridge. Claimant was injured while attempting to descend a ladder on said job. Mr. Meskimen was an operating engineer out of Peoria Local 649 and had worked out of this local about 20 years. He was sent to the I-474 project by the union for the purpose of running the watering system. On the date in question, Claimant descended a ladder to the area of one of the pumps, the pump being about nine feet below ground level. The ladder was

resting at the top against a dirt wall and had been in the same position for as long as Mr. Meskimen had been on the job. The construction of the ladder had not been changed nor had it been replaced by another ladder during the time Mr. Meskimen had worked there. Mr. Meskimen further stated that he would go up and down the ladder at least 12 to 14 times a day. The ladder was described as having had a hand rail with the rungs being constructed by 1 x 4 lumber. As Mr. Meskimen got to the bottom rung of the ladder and started to get off, his left foot slipped off the rung and got caught between the rail and the dirt wall and he then fell sideways. The rung of the ladder did not break.

There is some controversy as to the position of the bottom of the ladder in reference to the wall of the pit in which it was being used. It appears from reading the testimony of the various witnesses that the bottom of the ladder was approximately one foot away from the side wall. In view of the fact the pit was about nine feet deep, the bottom of the ladder had to be some distance from the wall or it would have a tendency to fall backward. There was no evidence of any kind or character to indicate this was the case.

The evidence is clear that Claimant had used this ladder ever since he first started working on this job and had used it many times a day. He was therefore familiar with the position of the ladder and the condition of the pit in which it was placed.

There is no question that Claimant suffered a severe injury. This is emphasized by the fact that he received a favorable decision under the Illinois Workmen's Compensation Act.

Claimant testified that the ladder in question was constructed with 2 x 4 siderails with 1 x 4 rungs and a

handrail. He further testified it had been raining as he descended the ladder and when he got to the bottom, his foot slipped and he fell, sticking his leg between the ladder and the embankment, and he fell to the side injuring his leg. He testified he came down the ladder backwards hanging onto the rungs of the ladder.

It is Respondent's contention that there are two issues involved in this case, the first being whether the State of Illinois, as the owner of the bridge, was in the position of "having charge of the project" as envisioned by the statute, and the second being whether the ladder in question was "erected and constructed in the safe, suitable and proper manner" as required by the Act.

It is Respondent's position that Respondent was not in charge of the project as envisioned by the statute and further that the record fails to show there was anything wrong with the ladder in question or that the State committed any wilful violation.

The evidence shows it had been raining on the day in question and that the bottom of the pit was muddy. Claimant testified he had cleaned his shoes with a screwdriver and the mud was already drying. The record is abundantly clear that the ladder in question had been used many times by Claimant who was thoroughly familiar with its position and the area where the accident occurred. The record also shows that a considerable number of individuals had used this ladder every day and the record is devoid of any evidence that any complaints had been made by anyone that the ladder was dangerous or did not conform to the Act.

Respondent argues very strongly that the record indicates that the control exercised by Respondent was directed solely to the quality of the product to assure that the end product would meet the engineering specifi-

cations spelled out in the contract documents. Respondent was also concerned not with *how* the result was achieved but only with the quality of the result.

Before Claimant can recover, he must prove that the Respondent was in charge of the work and committed a wilful or actual violation of said Act.

"Thus, before civil liability can arise under the act, the plaintiff must prove both that the defendant was in charge of the work and committed a wilful violation." *Smith v. Georgia Pacific Corp.* (1980), 86 Ill. App. 3d 391, 395-96.

"The plaintiff, however, must establish an actual violation of the act before he can recover." *Zizzo v. Ben Pelin Corp.* (1979), 79 Ill. App. 3d 386, 393.

The record discloses that there were OSHA inspectors on the job and that the inspectors were Federal inspectors and not State inspectors. The record is devoid of any showing that any complaints had been made to the inspectors regarding any so-called violations of the Act.

It is the Court's opinion that while this accident was unfortunate, Claimant has not met the proof required to establish liability on the part of Respondent.

Award is denied and this cause is dismissed.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.