**Lillian CONNORS, as Special Administrator of the Estate of Jack V. Connors, Sr., deceased, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America and C. Iber & Sons, Incorporated, Defendants–Appellees.**

**No. 89–3289.**

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1990.

Decided Oct. 31, 1990.

See also 711 F.Supp. 479.

Mark Novak, Curt N. Rodin, Anesi, Ozmon, Lewin & Associates, Chicago, Ill., for plaintiff-appellant.

James A. Lewis, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, Ill., L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for the U.S.

Peter C. Fieweger, Katz, McAndrews, Balch, Lefstein & Fieweger, Rock Island, Ill., for C. Iber & Sons, Inc.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and SNEED, Senior Circuit Judge.*

COFFEY, Circuit Judge.

Lillian Connors, as special administrator of the estate of Jack V. Connors, Sr., appeals the district court's judgment in favor of the United States on her claims made pursuant to the Illinois Structural Work Act, Ill.Rev.Stat. ch. 48, pars. 60–69, and the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, for injuries her husband, Jack Connors, suffered prior to his death. We affirm.

I.

Jack Connors was injured on April 13, 1982 while he was employed as a carpenter foreman for C. Iber & Sons, Inc. remodeling portions of a building at the United States Army Corps of Engineers' Rock Island (Illinois) Arsenal.[1] As a part of the remodeling contract, new windows were installed in Room 122 of Building 104. Connors was the only employee of C. Iber & Sons who was working on the night shift at the time of the accident. C. Iber & Sons was the general contractor on the remodeling project, and it was Connors' responsibility each day to oversee the work of the various subcontractors working on the

* The Honorable Joseph T. Sneed, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

1. Jack Connors died in December, 1987, before this case came to trial due to causes unrelated to the accident. Connors's wife, Lillian Connors, was substituted as plaintiff in this action in her capacity as administrator of her husband's estate.

project and to hold occasional safety meetings with the night shift employees, pursuant to the requirements of the contract between C. Iber & Sons and the United States. After Connors completed his oversight duties, he began his own work, which consisted of placing wood trim around the areas where new windows had been installed.

Immediately prior to his fall, Jack Connors was standing on an eight-foot ladder measuring the horizontal trim at the "top" of the new windows. Room 122 had a false ceiling which was ten feet, nine inches above the floor at the point where it intersected the windows. The area into which the windows were recessed, along with the windows themselves, extended approximately three feet above the level of the false ceiling.[2] The working plans and specifications Connors was working with were not received at trial. The district court did receive evidence that the remodeling project in Room 122 included the "filling in" of the area above the false ceiling level, with the portion of the window above that level being blocked by a piece of plywood and the false ceiling being extended into the recessed area around the windows, and trim being placed at the ten-foot, nine inch level. The significant disputed fact at trial, and the finding which Connors challenges on appeal, is whether Connors was referring in his deposition and statements to the ten-foot, nine inch level or the fourteen-foot level (the top of the window inside the recessed area) when he referred to measuring at the "top" of the windows immediately prior to his fall.[3] The importance of the factual issue regarding the precise height at which Connors was measuring prior to his fall was not apparent before his death and therefore it was not clarified in his recorded statements.

Jack Connors was measuring for horizontal trim when the step ladder on which he was standing overturned and catapulted him to the floor. The ladder was a free-standing eight-foot step ladder which was placed near the window he was measuring. As Connors reached into the recessed area to measure the horizontal width, he removed one foot from the ladder and, for reasons which are not entirely clear from Connors' description of the accident, placed that foot on some part of the window frame. At this time the ladder toppled and in the ensuing fall, Connors fractured five ribs on the left side of his body. Shortly thereafter, a blood clot formed in his left leg, ultimately necessitating amputation. The deceased plaintiff-appellant was the only person working in Room 122 the evening of the accident, and thus there were no eye witnesses to the accident. Richard Bump, an employee of an electrical subcontractor who was working in the building that night, testified that he had seen Connors in Room 122 approximately one and one-half hours prior to the fall. Bump stated that he had entered the room to ask Connors a question regarding work to be performed. At this time, Connors was on the third or fourth step from the top of the eight-foot step ladder measuring in and about the recessed area near the window, but the precise nature of what was being measured was unknown to Bump. Bump also stated that he recalled the ladder was placed at an angle, rather than immediately parallel to the wall as Connors had claimed, because there was furniture preventing the placement parallel to the wall. The district court judge stated that he was not convinced that Bump's recollections provided a totally accurate description of the furniture in the room, because of the time delay between the incident and the trial (seven years) and the fact that his attention would not have been focused on the furniture layout at the time of his visit. James Grimes, one of the Corps of Engineers' construction inspectors, testified that he had had a conversation with Connors in

2. The top of the window inside the recessed area was referred to at trial, and will be referred to throughout this opinion, as the "fourteen foot level."

3. Connors' version of the events surrounding his accident on April 13, 1982 are derived from the transcript of two oral statements which he gave to an insurance investigator, on December 15, 1982 and January 24, 1983, as well as his deposition which was taken on December 18, 1985.

Room 122 one or two days prior to the accident and had discussed the placement of vertical trim around the windows rather than the horizontal trim which Connors reported measuring when he fell.

Connors filed suit against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 ("FTCA"), claiming a violation of the Illinois Structural Work Act, Ill.Rev.Stat. ch. 48, pars. 60–69, and common law negligence, alleging that the injuries he suffered resulted from the government's negligence. His wife Lillian Connors also filed a suit, claiming damages for loss of consortium derivative of Jack Connors' negligence claim. Illinois law provides the law under which these FTCA claims are to be decided. *Hylin v. United States*, 715 F.2d 1206, 1210 (7th Cir.1983). The United States filed a third party complaint against C. Iber & Sons, Inc. claiming contractual indemnity for negligent acts of the contractor, pursuant to *United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).

After a bench trial, the district court rendered an oral decision in favor of the United States on all three counts. Specifically, the court found that the United States was "in charge of" the work being performed by Iber, pursuant to the Illinois Structural Work Act, but had not violated the Structural Work Act because it did not know, nor could its agents reasonably have anticipated, that Jack Connors would step off the ladder, causing it to fall. The court found that Connors had been working at the ten-foot, nine inch level immediately prior to his fall, that the ladder being used was a safe platform from which Connors could perform his work, and that Connors fell because of the unexplained, unanticipated act of Connors himself in transferring his foot from the ladder onto the window frame. Thus, the district court found that Connors' injuries were not caused by any misdeed on the part of the United States. The court also found that Connors failed to carry the required burden of proof as to the negligence claim, and consequently, Lillian Connors' personal claim for a loss of consortium must fail. Although Connors' initial brief on appeal alleges in its statement of the case section that the judgment on all three counts is being challenged on appeal, the arguments are limited to the Structural Work Act claim. Thus, we review only the Structural Work Act claim. Lillian Connors, in her capacity as administrator of Jack Connors' estate, appeals the judgment of the district court.

II.

The primary issue on appeal is whether the district court's action was proper in finding no liability against the United States pursuant to the Illinois Structural Work Act.[4] In order for a court to find

4. Section 1 of the Structural Work Act, Ill.Rev. Stat. ch. 48, par. 60, provides, in pertinent part:

"All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this state for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected or constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

A private cause of action arises under Section 9 of the Structural Work Act, Ill.Rev.Stat. ch. 48, par. 69, which provides in part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, and any such owner, contractor, sub-contractor, foreman or other person violating any of the provisions of this act shall be guilty of a Class A misdemeanor.

* * * * * *

For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid a right of action shall accrue to the surviving spouse of the person so killed, the lineal heirs or adopted children of such person, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for

liability under the Structural Work Act, the plaintiff must prove all of the following elements:

"(1) the plaintiff was engaged in or was passing under or by a structural activity; (2) when the activity was being performed with reference to a structure; (3) a scaffold or other mechanical devise was being used; (4) a defect existed in the construction or use of the devise; (5) the defect proximately caused the plaintiff's injuries; (6) the defendant had charge of the work being performed; and (7) the defendant willfully violated the Act's safety standard."

*Fisher v. Crippen*, 144 Ill.App.3d 239, 98 Ill.Dec. 183, 185, 493 N.E.2d 1204, 1206 (1986) (citations omitted). Connors' appeal involves only two of the elements: whether there was a defect in the use of the ladder, and whether the United States willfully violated the Act's safety standard.

The trial court's findings of fact pursuant to FTCA and the Illinois Structural Work Act will be affirmed unless they are clearly erroneous. *Phillips v. United States*, 792 F.2d 639, 644 (7th Cir.1986). A finding is clearly erroneous when, although there may be some evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (*quoting United States v. United States Gypsum Company*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). The trial judge's dispositive finding of fact and the primary finding contested by Connors on appeal, is the finding that Connors was working at the ten-foot, nine inch level at the time of the accident, rather than at the fourteen-foot level. There were no witnesses to the accident. Moreover, the relative importance of the issue regarding the height at which Connors was working was not sufficiently clear at the time of Connors' death, and as a result, neither his statements nor deposition testimony refer to the specific height at which he was working. Therefore, based on the totality of the record, the trial judge was required to make a finding regarding the height at which Connors was working immediately prior to his fall.

There is conflicting evidence in the record regarding the height at which Connors was working. In his first recorded statement as well as in his deposition, Connors stated that he was measuring for trim at the "top" of the window. However, in conjunction with these descriptions, Connors also referred to the fact that there was a ten-foot ceiling "in there," and never mentioned that he was working in the "soffit" area (the recessed area which extended above the false ceiling level). The trial judge found that Connors' statement that he was working on the fifth step from the top of the step ladder meant that his head was approximately two inches below the false ceiling level, thus, his working at the ten-foot, nine inch level appears logical. Other evidence received at trial, through the government's expert witness, Gene Parks, demonstrated that the construction project did not include trim at the fourteen-foot level, but did include trim at the ten-foot, nine inch level when completed. The trial judge ruled that Connors' statement regarding the "top" of the windows was ambiguous, (possibly referring to the trim at the top of the visible portion of the windows) and therefore was not as credible as the government's expert witness.

From the evidence presented, the trial judge was faced with two choices as to the height at which Connors could have been working. The factfinder's choice between two permissible views of evidence cannot be clearly erroneous. *Anderson v. City of Bessemer City, supra.* "This is so even when the district court's findings do not rest on credibility determinations, but are based and set on physical or documentary evidence or *inferences from other facts*" *Id.* (emphasis added). We believe based on the evidence that the district court's finding that Connors was working at the ten-

a like recovery of damages for the injuries sustained by reason of such loss of life or lives."

foot, nine inch level rather than the fourteen-foot level at the time of the fall is reasonable.

Both parties' expert witnesses testified that the eight-foot step ladder Connors was using would have been inadequate and improper for work at the fourteen-foot level, because of its limited height (taking into account Connors' height of five-foot, ten inches and his arm length of approximately twenty-six inches), but they disagreed as to the ladder's suitability for use at the ten-foot, nine inch level. William Heilman, the plaintiff's expert, testified that the ladder was inadequate for use even at the ten-foot, nine inch level; but Gene Parks, the expert for the United States, testified that the ladder would have been adequate and safe for work at the ten-foot, nine inch level, assuming it was being properly used. Thus, after having determined that the work was being performed at the ten-foot, nine inch level, the trial judge was presented with conflicting evidence dealing with the suitability of the ladder for the work being performed at the ten-foot, nine inch height. The district court chose to believe the government's witness regarding this factual issue. The question of whether a ladder is safe, suitable and adequate for its intended purpose is a question of fact, to be determined by the finder of fact. *Zizzo v. Ben Pekin Corp.*, 79 Ill.App.3d 386, 34 Ill.Dec. 707, 398 N.E.2d 382, 387 (1979). Once again, we will not reverse this finding, for a factfinder's choice between two permissible views of the evidence cannot be clearly erroneous. *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511.

The district court found that Connors' negligence in removing one foot from the ladder was the cause of his accident. This question of proximate cause under the Structural Work Act is a question of fact, and our review is subject to the clearly erroneous standard. *See Wilson v. Illinois Bell Telephone Co.*, 19 Ill.App.3d 47, 310 N.E.2d 729, 731 (1974). The trial judge found that Connors' use of the ladder was improper, that this was a proximate cause of the accident, and that no action or "misdeed" by the government was a cause of the accident. This finding was entirely plausible in light of the record in this case, and thus, the finding as to proximate cause was not clearly erroneous.

Connors was required to establish that the United States knew or reasonably should have known of the existence of the dangerous condition, that being Connors' defective use of the ladder. *Dickmann v. Midwest Interstate Electric Construction Co.*, 143 Ill.App.3d 494, 97 Ill.Dec. 551, 554, 493 N.E.2d 33, 36 (1986). The determination of whether the United States willfully violated the Structural Work Act is a question of fact, and thus subject to the clearly erroneous standard upon review. *See Dickmann*, 97 Ill.Dec. at 553–554, 493 N.E.2d at 35–36. The district court found that the ladder was appropriate for the use to which it was being put, and that there was no reason that the United States would have or should have known that Connors would use the ladder improperly. No evidence was presented at trial demonstrating that anyone associated with this job, including the agents of the United States, had previously seen Connors or any other employee of C. Iber & Sons use the ladder in the manner in which Connors stated that he used it (stepping onto the window frame with one foot). The record is silent of any reason to anticipate that this type of improper use would occur, because the measurement could have been accomplished with proper use of the ladder. When there is no notice of unsafe activities, there can be no finding of liability under the Illinois Structural Work Act. *See Phillips, supra.* Thus, the district court's finding that the United States did not willfully violate the Structural Work Act was not erroneous.[5]

III.

The decision of the district court is

AFFIRMED.

5. Since we affirm the district court's judgment in favor of the United States, it is not necessary to reach the alternative grounds for affirmance which are argued in the United States' brief on appeal.